THE STATE v. NATHAN RUDMAN, Appellant.—37 S. W. (2d) 409.

Division Two, March 25, 1931.

*Abbott, Fauntleroy, Cullen & Edwards* for appellant.

*Stratton Shartel,* Attorney-General, and *Don Purteet,* Assistant Attorney-General, for respondent.

WHITE, P. J.—The defendant was charged by information in the Circuit Court of the City of St. Louis with arson in the second degree, in that, April 25, 1928, he set fire to a certain storehouse at 4414 Natural Bridge Avenue in St. Louis, a building adjoining a dwelling house inhabited and occupied by one William Gruenekemeier and

his wife Victoria Gruenekemeier. On a trial, October 29, 1929, defendant was found guilty as charged, his punishment assessed at three year's imprisonment in the penitentiary, and he appealed from the judgment following.

The Gruenekemeiers lived in the second story of a two-story building at 4414 Natural Bridge Road on the south side of the street, fronting north. The first floor and the fixtures they had leased to the defendant, who conducted a retail shoe business there. Under the lease the defendant used a part of the basement. About 7:30 o'clock in the evening of April 25, 1928, Mrs. Gruenekemeier, upstairs, heard peculiar noises coming from below as if something were being thrown against the clothes chute which extended from the second story down to the basement. A stairway led from the second story to the first. She went down stairs, found the shade of one window down and another up a little way. Looking through she saw a man she did not recognize standing in the store tying up bundles and throwing them against the clothes chute. She went back upstairs and informed her husband. Then she placed her ear to the speaking tube which extended from the kitchen down to the lower floor and she heard a conversation between the defendant and Julius Hyken, a boy who worked for defendant in the store. She heard Mr. Rudman say: "You can take a bigger box." And the other man who was here said: "The shoes in this box we can take them out and wrap them up." Further she heard one of the men say, "I have a case of rubbers in the back there." Then someone said, "Bring them here."

A part of this conversation was in German. A little later Mr. Gruenekemeier went down to the first floor to investigate matters, and found only Rudman who was in the back of the store. Rudman came forward and "he was all sweated up and excited." Gruenekemeier asked him where his clerk was. Rudman answered that it was his clerk's day off. The stores in the neighborhood generally closed at 6:30. Gruenekemeier thought it was unusual that Rudman was in the store at that time of night. They had some conversation about the rent. Gruenekemeier then went out with Rudman and they walked to the corner and came back. Rudman went into the store and Gruenekemeier took position across the street. As Gruenekemeier came out of the store he saw two cartons near the door tied together. When he came back from down the street he got behind a telegraph pole and watched. It was then about twenty minutes to nine. Mr. and Mrs. Gruenekemeier testified that soon they saw a stout man and the defendant come out of the store and go to the defendant's automobile. The other man took a large parcel of bluish white paper from the machine and then they walked west down the street. Defendant got in his machine and went east. Mr. Grueneke-

meier came across the street and went upstairs. About a quarter of nine all the lights went out, and about five minutes after the defendant drove away and after Gruenekemeier went upstairs he and his wife heard four loud explosions in the lower part of the building, which made vibrations throughout the house. All the windows on the first floor were blown out; flame and smoke immediately commenced coming upstairs in the rear of the building. The Gruenekemeiers then turned in a fire alarm.

William Rohlfing, captain of the fire engine, and other firemen testified that there were two distinct fires not connected with each other; one in the basement, and one on the first floor. From the smell and other appearances they judged the fires had been started by gasoline. There was a gasoline odor and there was an oily feel of things in the basement. The State presented evidence tending to show goods in the store were insured in several policies totalling eight thousand dollars; that the sound value of the stock of goods was about $2500, and the loss of the stock $980. The fire chief, Rohlfing, testified that in every ten to fifteen boxes he would find a box with a pair of shoes in it and the others all had tissue paper in them. The defendant offered evidence to show that the insurance also covered the fixtures belonging to Gruenekemeier, worth about two thousand dollars; the lease provided that the fixtures should all the time be insured by defendant for five hundred dollars. The defendant testified that the goods in the store were worth nine thousand dollars. Other witnesses were introduced by the defendant to show the value of the goods was approximately as much as they were insured for. Defendant also brought out that it was customary in shoe stores, when a pair of shoes is sold, to retain the empty box in the shelf to make a good appearance. The boy Julius Hyken testified that he was not in the store at the time; that it was his day off. The defendant denied that he had anything to do with setting the fire, and offered evidence to show that he was a man of some property.

I. Defendant filed a demurrer to the evidence at the close of the State's case, also at the close of all the evidence, and makes the point that the evidence was insufficient to make a submissible case. The evidence as briefly stated above shows that the defendant had an opportunity and the means for setting the fire, and that he had the motive. The evidence fails to show that anyone else had access to the building except the defendant and the Gruenekemeiers who had no motive in setting the fire. And if the jury believed the Gruenekemeiers the evidence also shows the unusual presence and unusual operations of the defendant about the store at a time in the evening after business hours, his presence with a stranger, his carrying away bundles of unknown contents, the explosions followed by the fire within a few minutes after his de-

parture from the store, the apparent use of gasoline in causing the fire, and the absence of any assignable cause for it except human agency. The evidence was sufficient from which the jury could reasonably find that the defendant set fire to the store.

II. The principal point made by the defendant is that the evidence fails to show arson in the second degree. Section 3282, Revised Statutes 1919, defines arson in the first degree, so far as it affects the facts here, as where a person willfully sets fire to any dwelling house in which there shall be at the time some human being. Section 3283 defines a dwelling house as follows:

"Every house, prison, jail or other edifice, which shall have been usually occupied by persons lodging therein, shall be deemed a dwelling house of any person having charge thereof or so lodging therein; but no warehouse, barn, shed or other outhouse shall be deemed a dwelling house, or part of a dwelling house, within the meaning of this or the last section, unless the same be joined to or immediately connected with and is part of a dwelling house."

Section 3284 defines arson in the second degree as follows:

"Every person who shall willfully set fire to or burn any shop, warehouse, office, storehouse or other building not being the subject of arson in the first degree, but adjoining to or within the curtilage of any inhabited dwelling house, so that such dwelling house shall be endangered by such firing, shall, upon conviction be adjudged guilty of arson in the second degree."

The point made by appellant is that he was charged with arson in the second degree, setting fire to a building "adjoining to" or within the curtilage of an inhabited dwelling-house. It is argued that the first floor and the basement where the fire was set was not a building "adjoining to" a dwelling house but part of the same building in which the Gruenckemeiers lived. It was one building and not two buildings. And in order to be arson in the second degree there must be two buildings, the building which was set on fire and the adjoining dwelling to which fire is not set.

Appellant cites State v. Jones, 171 Mo. 401, where the defendant was charged with arson in the first degree. He set fire to a building which was occupied on the second floor as a dwelling house, and the lower floor was used as a drug store. The court held that the building was a dwelling house and the conviction of arson in the first degree was affirmed. No doubt, on that ruling, the entire building here was a dwelling house within the meaning of the arson statutes.

See also 19 Corpus Juris, 843, 844 et seq. The footnote citations furnish numerous instances of "dwelling houses" practically all of which applied here would compel the designation of the building at 4414 Natural Bridge Avenue as a dwelling house, and compel the

conclusion that if the defendant set it on fire, as the evidence tends to show, he was guilty of arson in the first degree.

III. In State v. Jones, 106 Mo. 302, l. c. 310, 311, cited approvingly in State v. Jones, 171 Mo. 401, supra, the defendant was charged with arson in the third degree and was convicted on that charge. The court held that it was no cause for reversal that the evidence showed or tended to show the defendant guilty of a higher degree of offense than that of which he was convicted, and said:

"He (defendant) cannot complain, if the State waives the right to proceed for the graver offense, provided always it includes the one with which he is charged, and he is fully informed of the charge of which the State seeks to convict him."

If the defendant had been charged with arson in the first degree, of which the evidence showed him guilty, he could not complain because Section 3692, Revised Statutes 1919, permits a jury to find one guilty of the lesser offense than that charged. Yet, because he is charged with a lesser offense and found guilty of a lesser offense, although the proof showed he was guilty of the greater offense, he claims there is failure of proof; that the crime charged is not the one proved. It is hard to see how he could be harmed by that. But the difficulty is met by the Statute of Jeofails. The court in the Jones case cited Section 4115, Revised Statutes 1889, which is verbatim the same in the part quoted as the Statute of Jeofails, Section 3908, Revised Statutes 1919, which provides:

"No indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceeding thereon be stayed, arrested or in any manner affected . . . because the evidence shows or tends to show him (defendant) to be guilty of a higher degree of the offense than that of which he is convicted."

Thus it does not matter whether the defendant was charged with a higher degree of the offense or with the degree of which he was found guilty, nor that the evidence showed him guilty of the higher one.

Appellant in effect argues that the offense proved was a different offense from that charged. This court recently has had under consideration "related offenses." [State v. Hancock, 320 Mo. l. c. 331.] There the defendant was charged with the transportation of moonshine and found guilty of possessing moonshine. It was held the proof did not sustain the charge because the two offenses were different. They were different acts. Possession is one act and transportation is a different act. That illustrates the distinction. In this case there was one act. The charge in the information was that the defendant set fire to and burned a certain building and storehouse situated at 4414 Natural Bridge Avenue, and that the building adjoined an inhabited dwelling. The defendant could not mistake

the offense of which he was charged. It was the same identical act and the same identical building as it would have been if there had been a dwelling house adjoining it. The offense was setting fire to the store. That it "adjoined" a dwelling house is a conclusion of the pleader from the facts in evidence. In an offense of different degrees, the degrees are distinguished not by a difference in the particular act performed, but by the conditions under which it occurs or the circumstances surrounding it.

The act of which the defendant was found guilty was exactly the same as if the dwelling had been beside the store to which he set fire instead of above it. He has no right to complain because he was convicted of the lesser offense and received a lighter punishment than he deserved.

IV. Appellant assigns error to the refusal of certain instructions asked by him. Instruction number one said in effect that though Rudman had opportunity and motive to set the fire and burn the building mentioned in the indictment that of itself would not justify a verdict of guilty unless in fact the jury should find that Nathan Rudman did set it afire. Instruction number two said that although the jury might believe there were suspicious circumstances pointing to guilt, yet this would not justify the jury in finding the defendant guilty unless they should find very strong and convincing testimony beyond reasonable doubt that the defendant did set fire to the building. Instructions of this character have usually been condemned by this court as comments upon the evidence. [State v. Rosenheim, 303 Mo. 1. c 570; State v. Pate, 268 Mo. l. c. 443; State v. Glenn, 262 S. W. l. c. 1032-33; Burton v. Holman, 288 Mo. l. c. 82.] Appellants cite cases such as State v. Ruckman, 253 Mo. 487, where it was held that evidence of motive was admissible, but that such evidence alone was not sufficient to make out a prima-facie case. That ruling does not mean that the jury should be instructed in a manner emphasizing the effect of such evidence.

Appellant further assigns error to refusal of instruction number four asked by him. It admonished the jury that their verdict must be unanimous: "No juror should yield his deliberate conscientious conviction as to the guilt or innocence of the defendant, either at the instance of a majority of the jury for the sake of unanimity, or to prevent a mistrial," etc. Cautionary instructions of that kind are usually discretionary with the court. It is merely admonitory, addressed to the jury by the judge, nothing more, and is no necessary part of "all the law of the case." It is in the discretion of the judge. The jury was fully instructed on all phases of the law affecting the case.

The judgment is affirmed. All concur.