**STATE of Missouri, Respondent,**

v.

**George McGOWAN, Appellant.**

**No. 53353.**

Supreme Court of Missouri,
Division No. 1.

*Oct. 14, 1968.*

Norman H. Anderson, Atty. Gen., Jefferson City, C. H. Parsons, Jr., Sp. Asst. Atty. Gen., Dexter, for respondent.

James A. Bell, St. Louis, for George McGowan.

STORCKMAN, Judge.

The defendant was convicted of burglary in the second degree which is a felony under § 560.070 RSMo 1959, V.A.M.S. The defendant stipulated that he had previously been convicted of a felony, robbery in the first degree, and pursuant to § 556.280, the court assessed the punishment and sentenced the defendant to a term of three years in the custody of the Department of Corrections of the State of Missouri. The defendant contends on this appeal that the evidence is insufficient to support the verdict and that the trial court erred in refusing to give three instructions offered by him. The defendant was represented by court-appointed counsel at his trial and the same counsel represents him on appeal. The defendant did not take the stand but in his behalf a witness identified certain photographs and measurements he had taken of the premises.

Substantial evidence introduced by the state tended to prove these facts in support of the verdict. At the time in question, Jack Wilhelm owned and operated the Sudsy-Dudsy Laundromat in leased premises at 2731 Goodfellow in the City of St. Louis. The building in which the business was conducted is on the northwest corner of Goodfellow and Maffitt; the entrance is on Goodfellow facing east. The laundromat occupied the south side of the ground floor and the rest of the ground floor on the north was occupied by the Fresno Cleaners except for a corridor in the rear of the building which was a part of the laundromat. In addition to the entrance door, there was a plate glass window in the front of the laundromat. A row of chairs and a table were along the south wall. Twenty washing machines were aligned along the north wall. Along an interior partition or wall separating the front and back rooms, there was a row of eleven dryers. The washing appliances were coin operated and coin boxes were attached. In the wall separating the laundromat from the cleaning establishment next door, there was a door which was always kept locked. A door in the interior wall or partition led from the front room to a room behind the dryers. This back room extended the width of the laundry and north in the form of a corridor behind the cleaning establishment.

In the rear exterior wall of the premises occupied by the laundromat, there were two barred windows, and at the north end of the corridor behind the Fresno Cleaners, there was a window which was boarded up and nailed shut. There were two openings which served as ventilators in the interior wall or partition between the front and back rooms. The ventilators were a little more than eight feet from the floor and were installed to carry off the heat generated by the dryers.

On October 26, 1966, Mr. Wilhelm left the laundry at about 4:30 p.m. while it was still open for business. An employee, George Carodine, remained on duty and closed the laundry at the usual time of 9:30 p.m. Mr. Carodine testified that he checked all the doors and windows and found them to be locked and secured. He locked the door between the front and back room and left by the front door locking it after him. All of the lights in the laundromat were left burning. Shortly after midnight, Thomas Rooks, on duty as a detective of the St. Louis Police Department, was driving west on Maffitt and as he turned north into Goodfellow he saw a man later identified as the defendant drop from one of the ventilators onto the floor of the front room of the laundromat. The officer parked his car, crossed Goodfellow, and took a position where he could observe the defendant through the front window. He watched the defendant for three or four minutes, saw his face and observed that the defendant was wearing khaki colored clothing and dark shoes. After coming out of the ventilator, the defendant went to the door between the front and back rooms and pulled at the lock. He then crouched down and went to the north wall between the laundromat and the adjoining cleaning establishment. An alarm was set off at this time and the defendant ran back to the ventilator, stepped upon a bench, jumped and pulled himself up and through the ventilator. Officer Rooks ran around to the rear of the building and found the defendant in an areaway behind the laundromat. The officer was joined almost immediately by two other policemen who assisted in the arrest and took custody of the defendant.

Mr. Wilhelm was notified and when he returned to the laundry about 2 a.m. on October 27, he found the front door locked but the boards had been removed from the rear window at the north end of the corridor; the window had been pried up and was open. The grille or covering for the opening which was the south ventilator was knocked out of place and was lying on the floor in front of the dryers. Some of the metal cabling above the dryers had been bent. Tools and other items used by the

employee Carodine were strewn on the floor in the back room.

■ The defendant complains in particular that the window in the north end of the rear corridor was not shown to be closed at the time the laundromat was closed at 9:30 p.m. Mr. Carodine testified that he examined this window about a half hour before closing time at which time the window was boarded up, closed, and nailed down. He also locked the door between the front and rear rooms. There is no evidence that any person other than the defendant had the opportunity or did enter the rear room until the defendant was observed coming through the ventilator from the rear to the front room. The evidence is not deficient in this respect; all the elements of second-degree burglary were proved. The trial court did not err in denying the judgment of acquittal at the close of all the evidence. State v. Allen, Mo., 420 S.W.2d 330, 333[4]; State v. Rhodes, Mo., 408 S.W.2d 68, 70[4, 5]; State v. Peterson, Mo., 305 S.W.2d 695, 700[10, 11]; State v. Ruffin, Mo., 286 S. W.2d 743, 747[7].

Next the defendant contends that the court erred in refusing to give and read to the jury an instruction offered by him, marked instruction No. A, and reading as follows: "You are further instructed that in the trial of a criminal case, there may arise circumstances that are suspicious, or unexplained; suspicious circumstances standing alone, are not sufficient to convict a person of a crime, but thay (sic) may be considered along with other evidence in determining the guilt or innocence of the defendant." The defendant urges that the theory of law embodied in this instruction was approved in State v. Rogers, Mo., 380 S.W.2d 398, State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, and State v. Archer, Mo., 6 S.W.2d 912. In all three of these cases the evidence was held to be insufficient to support the verdicts and the defendants were discharged. The cases held in substance that evidence raising only a suspicion of guilt will not sustain a con-

viction. None of them involve an instruction of the kind here involved. The cases are not persuasive that the refused instruction should have been given.

■ The trial court in approved form gave instructions covering in comprehensive fashion the law with respect to circumstantial evidence. This was done although the defendant was discovered in the building by the police officer and was captured in the rear of the building near the broken window. The court would have been justified in refusing the requested instruction on the ground that the subject was adequately covered by other instructions. State v. McCollum, Mo., 377 S.W. 2d 379, 388[17]; State v. Burrage, Mo., 418 S.W.2d 101, 108[12].

■ The refused instruction is also subject to the criticism that it was an unwarranted comment on particular facts and circumstances in evidence and was argumentative in nature. State v. Rudman, 327 Mo. 260, 37 S.W.2d 409, 412[8]; State v. Nolan, Mo., 423 S.W.2d 815, 819[17]. The court did not err in refusing the instruction.

The defendant further complains of the refusal of the court to give instructions B and C offered by him. The instructions are practically identical and the justification for the refusal of one applies to the other. In substance the instructions told the jury that the offense of second-degree burglary was a felony for which the defendant was liable to be punished by imprisonment in the penitentiary. Instruction B had these additional features: "with death or imprisonment in the penitentiary, and no other."

■■ Given instruction No. 1 used the term "feloniously" and properly defined it. The refused instructions injected the term "felony" and purported to define it, but did not do so entirely in accordance with the 1961 amended statute. The given instructions adequately covered the subject. State v. Durham, Mo., 418 S.W.2d 23, 31[22, 23]. Since the prosecution invoked the Habitual

Criminal Act, § 556.280, the punishment was a matter to be determined not by the jury but by the trial court so the defendant could not have been prejudiced by the refusal of instructions B and C. State v. Courtney, Mo., 425 S.W.2d 121, 122–123[2, 3]. The trial court properly refused them.

We have considered all questions presented by the defendant and find them to be without merit. We have also examined those parts of the record specified by S.Ct. Rule 28.02, V.A.M.R., and find them to be sufficient and free from error.

The judgment is affirmed.

SEILER, J., and HALMAN, Alt. J., concur.

HENLEY, P. J., not sitting.