**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Calvin NORTHCUTT,
Defendant-Appellant.**

**No. 61492.**

Supreme Court of Missouri,
En Banc.

May 13, 1980.

William D. Mykins, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Weldon W. Perry, Jr., Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

RENDLEN, Judge.

Calvin Northcutt, convicted of shooting into a dwelling house in violation of § 562.-070, RSMo 1969,[1] was sentenced in accordance with the jury's verdict to six months in the county jail and fined $200.00. The cause was transferred here from the Court of Appeals after opinion reversing the trial court's judgment and we review as though on original appeal. Art. V, § 10, Mo.Const. Defendant for his allegations of error, contends; (1) the building into which defend-

---

1. Section 562.070, RSMo 1969, provides:

    Every person who willfully and maliciously shoots into any dwelling house, garage, barn, stable, or other out building, or into any aircraft, motor vehicle as defined in section 302.010, RSMo, railroad train, or streetcar, is punishable by imprisonment not exceeding three years, or by a fine of not exceeding two hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both the fine and imprisonment in the county jail. (Transferred, now § 571.030, RSMo 1978)

ant fired his revolver was not shown to be a dwelling house as that term is employed in § 562.070, and (2) the main verdict-directing instruction improperly substituted the word intentionally for the statutory term willfully when describing the acts proscribed. We affirm.

Northcutt was drinking at the Cotton Stop Tavern located near Sullivan, Missouri during the morning of May 14, 1976. He left for a period in the afternoon but returned to the tavern where he began playing his violin. Shortly afterwards a fight developed between Northcutt and another patron who sought to play the jukebox and the waitress refused to serve appellant any more to drink. With this he became belligerent, profanely threatening to get his gun and shoot all of those in the place. He then left in his jeep but returned to the parking lot in front of the tavern, where, brandishing a .357 magnum revolver, he fired a number of shots, five of which went through the windows and one through the tavern's door. At the time, the tavern owner, Mr. Bass, the waitress, Mrs. Bylo, and a number of patrons were in the bar. Mr. Bass sustained an injury to a finger on one hand. Mrs. Bylo was struck in the eye by some debris as the bullets ripped into the building.

Appellant departed and the police were called, arriving at the tavern about thirty minutes after the shooting. Appellant was taken into custody a short time later by a deputy sheriff who, observing him drive past the tavern, pursued and arrested him. When taken into custody appellant was wearing a pistol in a holster belted to his waist.

Mrs. Bylo testified that at the time of the shooting she was living in an apartment "above the Cotton Stop Tavern." Mr. Bass, the 76 year old tavern owner, testified that he was "living there at the Cotton Stop." When discussing a visit from the defendant, Mr. Bass stated that defendant came to his "living quarters in the rear of the building."

Defendant maintains the evidence presented by the State is insufficient to sustain a conviction for shooting into a dwelling house under § 562.070, RSMo 1969. When measuring this contention we view the evidence in a light most favorable to the State, affording the verdict the benefit of all reasonable inferences and disregarding contrary evidence, *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977), and in so doing we believe the jury could reasonably have found that the building into which defendant fired his pistol was a dwelling house.

■ The thrust of defendant's assertion is that a multipurpose structure cannot qualify as a dwelling house under § 562.070, because such building must be used exclusively as a dwelling house. Alternatively, as indicated by the majority opinion of the Court of Appeals, in a multipurpose building the bullet must enter that part of the structure used for residential purposes. Neither proposition correctly states the law. Principles of statutory interpretation, other statutory definitions, and previously decided Missouri cases construing the term "dwelling house" in the arson, larceny, and burglary statutes lead us to reject those contentions and adopt the more general and correct view of the statutory term set forth in the dissenting opinion of the Court of Appeals, Stewart, J.

No definition of "dwelling house" appears in Chapter 562, RSMo but the annotation in RSMo 1969 and the cross reference in V.A. M.S. refer to § 560.015 where the term is defined in connection with the statute on arson as follows:

Every house, prison, jail or other edifice, which shall have been usually occupied by persons lodging therein, shall be deemed a dwelling house of any person having charge thereof or so lodging therein; but no warehouse, barn, shed or other outhouse shall be deemed a dwelling house, or part of a dwelling house, within the meaning of this section or section 560.010, unless the same be joined to or immediately connected with and is part of a dwelling house.

A general definition of "dwelling house" is found in Black's Law Dictionary, 596 (4th Ed. 1968):

> The house in which a man lives with his family; a residence; abode; habitation; the apartment or building, or group of buildings, occupied by a family as a place of residence.

The note to the definition states:

> "Dwelling house" is a very flexible term. Its meaning depends not only on context, but on the determination of the courts not to permit public policy or justice to be defeated by a word. "Dwelling house" often means any building within the curtilage. *Daniels v. Commonwealth*, 172 Va. 583, 1 S.E.2d 333, 335. It may mean a single house used by one family exclusively as a home. It may include an apartment building, or any structure used by human beings, partly for business and partly for residential purposes, or a building regardless of habitation. *Gerstell v. Knight*, 345 Pa. 83, 26 A.2d 329, 330.

Similarly a number of cases applying the term dwelling house in our arson, larceny, and burglary statutes to multipurpose structures support a non-restrictive definition of the term.[2]

For example, in *State v. Jones*, 171 Mo. 401, 71 S.W. 680 (1903), an arson case, it was held that a building with a drug store on the first floor and living quarters on the second was a dwelling house, though there was no indication the fire started in or spread to the living quarters. Similarly, in *State v. Rudman*, 327 Mo. 260, 37 S.W.2d 409 (1931), the owners of a building lived on the second floor and rented the lower floor to defendant who operated a shoe store in that part of the building. Defendant was charged with setting fire to the building and the court held the building was a dwelling house for purposes of the arson statute.

In an early case, *State v. Leedy*, 95 Mo. 76, 8 S.W. 245 (1888), the Court held that larceny from a room in a hotel, used as an office and as a store for the sale of cigars, and other merchandise, constituted larceny from a dwelling house though the dwelling quarters of the building had not been entered.

Finally, in *State v. Parker*, 501 S.W.2d 3, 6 (Mo.1973), defendant was convicted of second degree burglary for breaking and entering the basement of an apartment house. The Court there rejected the contention that proof of entry into one of the living quarters was required to sustain a conviction for burglary of a dwelling house.

It is axiomatic that "the purpose and object of the statute must always be considered," in statutory construction. *State v. Kraus*, 530 S.W.2d 684, 685 (Mo. banc 1975). The rationale for considering buildings used both for habitation and business as dwelling houses in the context of burglary, larceny, and arson statutes is appropriate to the section under consideration here. It is apparent from the statutes describing those crimes and that of shooting into a dwelling house, that they are not mere offenses against property but against the security of the habitation. Injury to the inhabitants who may or may not be present at the time is not an element of those offenses, it is the apprehension or possibility of harm to the inhabitants that offends. A bullet like a fire possesses no volition. It may ricochet or fragment in several directions. Given the vagaries of a projectile shot into a building, the narrow construction of the term "dwelling house" urged by defendant would needlessly frustrate the important public safety purpose of the law.

Considering the evidence in the light most favorable to the State and affording the verdict all reasonable inferences from the evidence we believe a jury could find that Mrs. Bylo lived in the upper floor of Cotton Stop and that Mr. Bass lived on the first floor, and considered the quarters in the rear of the tavern to be his home.

Because living quarters were located to the rear and above the tavern area, the

---

**2.** In *People v. Chavira*, 3 Cal.App.3d 988, 83 Cal.Rptr. 851 (1970), the court interpreted a similar statute, Cal.Penal Code, § 246 (West), proscribing the discharge of a weapon into an inhabited dwelling house by reference to decisions involving burglary statutes.

Cotton Stop Tavern could properly have been found a dwelling house for the purposes of § 562.070, RSMo 1969. The character of the building having been established as a dwelling house, shooting into any part of the building is offensive to the security of the habitation and thus violative of the statute. For these reasons defendant's first allegation of error is denied.

■ Defendant next contends that instruction no. 5 improperly stated the law and a further definitional instruction was required. Pertinent portions of instruction no. 5, the main verdict-director, are as follows:

> If you find and believe from the evidence beyond a reasonable doubt: First, that on or about May 14, 1976, in the County of Franklin, State of Missouri, the defendant, Calvin Northcutt, did fire a shot or shots into a building, and Second, that the said building was then a dwelling house, and Third, that the defendant did so maliciously—that is, intentionally and without just cause or excuse, than (sic) you will find the defendant guilty of shooting into a dwelling house.

The fact that the word *intentionally* was employed in the instruction for the statutory phrase "willfully" is of little moment. Our cases recognize the terms are synonymous. See *State v. Marston*, 479 S.W.2d 481, 483–484 (Mo.1972). In *State v. Foster*, 355 Mo. 577, 197 S.W.2d 313, 321 (1946), it was held that substitution of the term *intentionally* for *willfully* in a manslaughter instruction did not constitute error and so in the case at bar the interchanging of those terms was permissible. There was no applicable MAI–CR instruction for § 562.-070 violations but the instruction given satisfied our requirement that the form be "simple, brief, and impartial, and free from argument." Rule 28.02(d). Finally, contrary to defendant's view, the words employed were of common usage and general understanding, accordingly no definitional instruction was required. *State v. Goodman*, 490 S.W.2d 86, 87–88 (Mo.1973).

The judgment of the trial court is affirmed.

All concur.

