**STATE of Missouri, Respondent,**

v.

**Jeffrey GODDARD, Appellant.**

**No. WD 57923.**

Missouri Court of Appeals, Western District.

Dec. 26, 2000.

Irene C. Karns, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Linda Lemke, Asst. Atty. Gen.,Jefferson City, for respondent.

HOLLIGER, Presiding Judge.

Jeffrey Goddard was convicted of unlawful use of a weapon under § 571.030.1(3), RSMo Supp.1998 for discharging a firearm into a dwelling house. He appeals the judgment of conviction, arguing that discharging a firearm *from within* a dwelling house is not the equivalent of discharging a firearm *into* a dwelling house and, therefore, the trial court erred in denying his motion for acquittal because there was insufficient evidence to establish that he violated the statute. We agree. Discharging a firearm from within a dwelling house is not the equivalent of discharging a firearm into a dwelling house. Accordingly, we reverse.

## I. FACTS

Viewed in the light most favorable to the verdict, the facts are as follows. In January 1999, Goddard shared a home with Ruby Trotter in Moberly, Missouri. The relationship had been strained for a time and they were maintaining separate bedrooms. On January 27, Goddard left the house for several hours, and returned home intoxicated. After arguing with Ms. Trotter and accusing her of not caring about him, Goddard went into the kitchen. Ms. Trotter heard dishes breaking and she went into the kitchen. As she cleaned up the mess, Goddard attacked her, threatened to kill her, and told her that after he killed her, he would shoot at the police and they would then shoot him. He grabbed her by the hair and neck and dragged her from the kitchen, telling her he was taking her upstairs to get his guns so he could shoot her. Goddard stumbled over a chair and Ms. Trotter broke free and ran from the house to a neighbor's house, where the police were summoned.

When the police arrived, Ms. Trotter advised them that Goddard was in the house alone. As the three police officers approached the house, from different locations, they heard shooting inside the house. The state contends that the officers believed Goddard was shooting at them, took cover, and then secured the house. The officers took Goddard into custody and searched the house on Ms. Trotter's consent. They found bullet holes in the walls, one near the east window, three at the top of the stairs, and one in the wall in Goddard's bedroom, as well as fresh shell casings on the floor. Incidentally, they also found marijuana plants and paraphernalia in Goddard's bedroom.

Goddard was charged with felonious restraint (§ 565.120), unlawful use of a weapon (§ 571.030), third degree assault (§ 565.070) and possession of more than five grams of marijuana (§ 195.211). A jury convicted him on all charges. At sentencing, the court granted Goddard's motion for acquittal notwithstanding the verdict as to production of the marijuana (Count IV).[1] Goddard was sentenced to

---

1. The court believed there was insufficient evidence that he possessed more than five grams.

five years for felonious restraint, three for unlawful use of a weapon, and one for assault. This appeal follows.

## II. STANDARD OF REVIEW

In considering a challenge to the sufficiency of the evidence, we accept as true all evidence and its inferences in a light most favorable to the verdict, and we reject all contrary evidence and inferences. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993); *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). We only determine whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt, not whether the verdict was against the weight of the evidence. *State v. Smith,* 944 S.W.2d 901, 916 (Mo. banc 1997). This same standard of review applies when reviewing a motion for a judgment of acquittal. *State v. Pulis,* 579 S.W.2d 395, 398 (Mo.App.1979).

## III. DISCHARGING A FIREARM FROM WITHIN A DWELLING HOUSE IS NOT THE EQUIVALENT OF DISCHARGING A FIREARM INTO A HOUSE

Goddard's sole point on appeal is that the court erred in denying his motion for acquittal on the charge of unlawful use of a weapon in violation of § 571.030.1(3) because the evidence was insufficient to establish that he fired a weapon into the house, particularly because he was alone inside the house, he fired into the walls, and no bullets left the interior of the house. He argues that his conduct is not prohibited by the statute, which, instead, proscribes the firing of a weapon *into* a dwelling house. Section 571.030.1(3) states, in relevant part:

> A person commits the crime of unlawful use of weapons if he knowingly ... [d]ischarges or shoots a firearm into a dwelling house[.]

Although § 571.030.1(3) prohibits the discharge of a firearm into a dwelling house, it does not define the word "into," as used in the statute. When engaging in statutory interpretation, we are required "to determine the intent of the legislature from the words used in the statute and give effect to that intent," while keeping in mind that the language used should be given its plain and ordinary meaning. *Missouri Comm'n on Human Rights v. Red Dragon Restaurant, Inc.,* 991 S.W.2d 161, 166 (Mo.App.1999). Thus:

> If the language of the statute is unambiguous, there is no basis for construction of the statute and the court must give effect to the statute as it is written. [Citation omitted.] Courts, however, look beyond the plain and ordinary meaning of the statute when its meaning is ambiguous or will lead to an illogical result which defeats the intent of the legislature.

*Kansas City Star Co. v. Fulson,* 859 S.W.2d 934, 938 (Mo.App.1993). "To determine whether a statute is clear and unambiguous, this court looks to whether the language is plain and clear to a person of ordinary intelligence." *Russell v. Missouri State Employees' Retirement System,* 4 S.W.3d 554, 556 (Mo.App.1999). We may consult other legislative or judicial meanings which have been attached to the term. *See, Boyd v. State Bd. of Registration for the Healing Arts,* 916 S.W.2d 311, 315 (Mo.App.1995) (holding that "[w]hen the legislature enacts a statute referring to terms which have had other legislative or judicial meanings attached to them, the legislature is presumed to have acted with knowledge of these meanings"). Moreover, where construing a criminal statute, we will examine the plain language of the statute in an attempt to determine the legislature's intent. *State v. Crews,* 968 S.W.2d 763, 765 (Mo.App.1998). Where the meaning of the statute is unclear or ambiguous, we will construe it

strictly against the state, keeping in mind common sense and the evident statutory purpose. *State v. Hobokin,* 768 S.W.2d 76, 77 (Mo. banc 1989).

The state argues that the statute is not ambiguous, and asserts that Goddard's shooting into the interior of the house is the same as shooting into the house, thereby satisfying the legislative intent of the statute. The state also argues that holding as Goddard would have us hold would lead to an illogical result, contrary to that intended by the statute, that one could stand in the doorway of a home and shoot into it and violate the statute, but stepping across the threshold and shooting from inside the house would not.

Neither Goddard nor the state has cited legal authority directly on point, and our review of Missouri law reveals no previous explicit definition of the word "into" for the purposes of this subsection. The term "into" is a preposition defined as **"from the outside to the inside of;** toward and within *[into* a house*]*," WEBSTER'S NEW WORLD COLLEGE DICTIONARY 708 (3d Ed.1997)(emphasis added). This is consistent with that of BLACK'S LAW DICTIONARY, which defines "into" as "[a] preposition signifying to the inside of; within. It expresses entrance, **or a passage from the outside of a thing to its interior** . . . ." BLACK'S LAW DICTIONARY 822 (6th ed.1990)(emphasis added).

Both Goddard and the state have relied on cases that deal with the definition of a dwelling house and, correspondingly, the protection of the inhabitants. Goddard cites *State v. Morrow,* 888 S.W.2d 387 (Mo.App.1994), which held that the statute is designed to protect the occupants of the house. The state cites *State v. Northcutt,* 598 S.W.2d 130 (Mo. banc 1980), for its holding that the purpose of the statute is to protect "habitations" and not just the inhabitants "who may or may not be present." *Id.* at 132. We find that these arguments sidestep the real issue. "Clearly, the statute is designed to protect the occupants of a dwelling house and punish the person who would, by the proscribed act, put the occupant's life in jeopardy." *Morrow,* 888 S.W.2d at 392. And while the protection of inhabitants is of the utmost concern at the heart of the statute, our focus today is not whether the house was a "dwelling house" but whether Goddard shot into the house. We find that there was insufficient evidence to show that Goddard violated the statute.

█ The evidence clearly established that Goddard fired shots while inside the house. Ms. Trotter testified to bullet holes in the hallway of the house. Officer Hopper testified that he observed bullet holes in the house and he found spent shell cartridges inside the house. There was no evidence whatsoever about bullet holes or spent cartridges outside the house, or that the shots were fired from anywhere outside the house. There is no basis in the evidence to find that Goddard shot from outside to inside the dwelling as is required by § 577.030.1(3).

Holding as we have, we do not mean to suggest that Goddard did not commit an actionable offense by knowingly shooting within the house. He likely violated other statutes under which the state may have prosecuted him. The state, however, selected the charge to file against him.

For the foregoing reasons, we reverse Goddard's conviction of unlawful use of a weapon.

BRECKENRIDGE and SMART, JJ., concur.