92 S.W.3d 205 (2002)
STATE of Missouri, Respondent,
v.
Antwone WASHINGTON, Appellant.
No. WD 60354.
Missouri Court of Appeals, Western District.
October 29, 2002.
Motion for Rehearing and/or Transfer December 24, 2002.
Application for Transfer Denied January 28, 2003.
*206 Elizabeth U. Carlyle, Lee Summit, for appellant.
Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for respondent.
Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR., and THOMAS H. NEWTON, JJ.
Motion for Rehearing and/or Transfer to Supreme Court December 24, 2002.
THOMAS H. NEWTON, Judge.
Mr. Antwone Washington appeals from a judgment convicting him of first degree burglary and stealing. We reverse Mr. Washington's conviction for first degree burglary, enter a conviction for second degree burglary, and remand the case for resentencing. In all other respects, we affirm.

I. Factual and Procedural Background
Mr. Washington's conviction stems from an incident at the residence of Ms. Mary Vannice. On August 18, 1999, Ms. Vannice's neighbor, Mr. Steve Nelson, observed an unfamiliar man walking toward the Vannices' open garage. Moments later, Mr. Nelson observed the same man walking away from the garage carrying a leaf blower and a weed trimmer. Mr. Nelson later identified that man as Mr. Washington. *207 Police subsequently arrested Mr. Washington as a suspect in the Vannice case. Among other things, the State charged him with first degree burglary based upon the allegation that he entered the Vannice garage and removed the yard tools while Ms. Vannice and her teenage son were home. Mr. Washington denied being the burglar, attributing his arrest to a case of mistaken identification by Mr. Nelson.
At trial, Mr. Washington argued, among other things, that there was insufficient evidence to place him at the residence and that the State had not satisfied the elements for first degree burglary. He moved for judgment of acquittal at the close of the State's evidence and at the close of all evidence. The trial court denied these motions.
The trial court read several instructions to the jury. Instruction number 5, submitted by the State, set forth the elements of first-degree burglary. Instruction number 7, also submitted by the State, set forth the elements of stealing. The trial court likewise read the converse instructions that Mr. Washington submitted. Instruction number 6 was supposed to be Mr. Washington's converse of instruction number 5, the burglary instruction, but Mr. Washington inadvertently submitted a duplicate of his converse to the State's stealing instruction instead. As a result, the trial court never read a converse to the State's burglary instruction.
The jury convicted Mr. Washington of first-degree burglary and stealing, but acquitted him of first-degree tampering with a motor vehicle. Mr. Washington stipulated that he had a prior conviction and was a prior offender. The trial court sentenced him to five years in the Missouri Department of Corrections on the burglary conviction and to thirty-days in the Jackson County Department of Corrections on the stealing conviction, to run concurrently with time served in the Regimented Discipline Program under § 217.378. The court suspended execution of the sentence on the burglary conviction and placed Mr. Washington on probation. As a condition of probation, the trial court ordered Mr. Washington to complete the Regimented Discipline program. He now appeals.
In his first point, Mr. Washington argues that the trial court erred in overruling his motions for judgment of acquittal because the State did not establish that he burglarized an inhabitable structure while anyone else was present. In his second point, Mr. Washington requests plain error review of the trial court's exclusion of expert testimony pertaining to witness identification. In his third point, Mr. Washington requests plain error review of the trial court's failure to address allegedly improper comments made by the prosecution during closing argument. In his fourth and final point, Mr. Washington requests plain error review of the failure to submit a converse instruction on the burglary count.

II. Standard of Review
Mr. Washington has preserved only one point of error for review: his claim that the trial court erred in denying his motions for judgment of acquittal because there was insufficient evidence to convict him of first degree burglary. When reviewing a challenge to the sufficiency of the evidence we "accept as true all evidence and its inferences in a light most favorable to the verdict, and we reject all contrary evidence and inferences." State v. Goddard, 34 S.W.3d 436, 438 (Mo.App. W.D.2000). "We only determine whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt, not whether *208 the verdict was against the weight of the evidence." Id. The same standard applies to the review of a motion for a judgment of acquittal. Id.

III. Legal Analysis
A. The Garage Is Not Part of An Inhabitable Structure
Mr. Washington's first point requires us to consider the meaning of the term "inhabitable structure" as defined in § 569.010(2)[1] and as used in § 569.160.1. To get at the meaning of this term in the context of our case, we must assess the General Assembly's intent "from the words used in the statute and give effect to that intent ..." Goddard, 34 S.W.3d at 438. In so doing, we examine the language used, according it its plain and ordinary meaning. State v. Williams, 24 S.W.3d 101, 115 (Mo.App. W.D.2000). Where the meaning is ambiguous or will lead to an illogical result, we look beyond the plain and ordinary meaning of the statute. Goddard, 34 S.W.3d at 438. In such a case, we construe the statute strictly against the State, "keeping in mind common sense and the evident statutory purpose." Id. at 438-39. See also State v. Northcutt, 598 S.W.2d 130, 132 (Mo. banc 1980) (when interpreting statutory provision, the court must consider purpose and object of that provision). With these principles to guide us, we turn to the contested terminology.
A person commits the crime of first degree burglary if he "knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein" and does so while "[t]here is present in the structure another person who is not a participant in the crime." § 569.160.1(3). Section 569.010(2) helpfully defines the term "inhabitable structure":
"Inhabitable structure" includes a ship, trailer, sleeping car, airplane, or other vehicle or structure: (a) Where any person lives or carries on business or other calling; or (b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or (c) Which is used for overnight accommodation of persons. Any such vehicle or structure is "inhabitable" regardless of whether a person is actually present[.][2]
Id.
Section 569.010 does not define the term "building."
Although a person may commit first degree burglary in either a building or an inhabitable structure, the first-degree burglary charge submitted to the jury in this case did not refer to the burglary of a building. It referred only to the burglary of an inhabitable structure. By charging Mr. Washington with entering an inhabitable structure, the State assumed the burden of proving that the Vannice garage was such a structure. See State v. Yacub, 976 S.W.2d 452, 453 (Mo. banc 1998).
Mr. Washington argues that the State failed to meet its burden. He argues that the victim's garage by itself does not fall within the definition of an inhabitable structure because the State presented no evidence that anyone lived or slept in the garage, that anyone carried on a business there, or that anyone assembled there for any purpose, let alone those purposes set out in § 569.010(2). He further argues *209 that the garage in this case is not part of the home to which it is attached because the garage and the living space in the home are not connected by an interior door.
We have no doubt that the home by itself qualifies as an inhabitable structure[3] under the plain meaning of § 569.010(2)(a) and (c), both as a place where people live and as a place used for overnight accommodation. See also Yacub, 976 S.W.2d at 453 (rental home deemed an inhabitable structure); State v. Pulis, 822 S.W.2d 541, 544-45 (Mo.App. S.D.1992) (generally discussing the meaning of the term "building" and the term "inhabitable structure" and holding that a commercial greenhouse was an inhabitable structure).
Conversely, we also have no doubt that the garage by itself fails to qualify as an inhabitable structure under the plain meaning of § 569.010(2). As Mr. Washington observes, there is no evidence that any of the defining activities set forth in § 569.010(2)activities that make a structure inhabitableever occurred in the garage.
The question, then, is whether the garage qualifies as a part of the home's inhabitable structure under § 569.010(2). In this case, we think not.
Section 569.010(2) does not tell us whether a garage is part of a home's overall inhabitable structure. As applied to this case, the statute is ambiguous. However, it appears that one of the evident purposes behind the first-degree burglary statute is to increase the penalty for someone who puts an innocent in harm's way during a burglary. Cf. Northcutt, 598 S.W.2d at 132 (recognizing generally that burglary is not merely an offense against property, but an offense against the security of habitation). Thus, the General Assembly has raised what otherwise would be second degree burglary to first degree burglary in cases where "[t]here is present in the structure another person who is not a participant in the crime." § 569.160.1(3).
Given this apparent purpose, the garage does not qualify as part of the home's inhabitable structure in this case. As the State's photographic exhibits undoubtedly demonstrate, the home and the garage are attached. They share a common roof and common walls. A covered porch leads from the home to the garage. But what undermines inclusion of the garage within the home's inhabitable structure is the lack of any connection between the inside of the garage and the inside of the home's living quarters.
The absence of a common doorway connecting the garage and the home substantially alleviates the danger that § 569.160.1(3) seeks to deter. Because the door leading into the home is different from the door leading into the garage, there is relatively less danger here compared to a case in which a homeowner must enter and exit the home's living quarters through the garage. Cf. State v. Walker, 693 S.W.2d 237, 238-39 (Mo.App. S.D.1985) (holding that flower shop and attached living quarters were "integral parts of the same structure" and affirming first degree burglary conviction under § 569.160.1(3) where homeowners had to enter and exit living quarters via flower shop); State v. Allen, 944 S.W.2d 580, 582, 583 (Mo.App. W.D.1997) (without addressing definition of inhabitable structure as it applies to first degree burglary statute, court held that reasonable jurors could have found that defendant "knowingly entered *210 unlawfully" into garage for purposes of first degree burglary conviction in a case where it appeared that the home's residents could access the garage directly from inside of the home).
Given the purpose behind § 569.160.1(3), and the relative inapplicability of that purpose here, we find Mr. Washington's conviction of first-degree burglary to be inappropriate. Because the garage is not a part of the home's "inhabitable structure" here, the State failed to prove that Mr. Washington and another person were present in such a structure, as required for a first degree burglary conviction under § 569.160.1(3).
B. Mr. Washington Can Be Convicted of Second Degree Burglary
Although the evidence in this case was insufficient to support a conviction for first-degree burglary, that evidence could have supported a conviction for second degree burglary. We have the authority to enter such a conviction if the circumstances warrant it:
Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of those elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.
State v. O'Brien, 857 S.W.2d 212, 220 (Mo. banc 1993). See also Rule 84.14[4] ("The appellate court shall ... give such judgment as the court ought to give.").
Second degree burglary is a lesserincluded offense to first degree burglary. See, e.g., State v. Gifford, 749 S.W.2d 702, 705 (Mo.App. S.D.1988); Juralos v. State, 641 S.W.2d 445, 446 (Mo.App. E.D.1982). To convict a defendant of second degree burglary, a jury must find all of the elements necessary to convict a defendant of first-degree burglary. Just as with first degree burglary, a person commits the crime of second degree burglary "when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." § 569.170.1. Section 569.170.1 simply dispenses with the additional first-degree burglary element requiring an innocent's presence. Compare § 569.160.1 with § 569.170.1.
On the record before us, there was sufficient evidence from which a jury could have found each of the elements necessary for a second-degree burglary conviction. Mr. Nelson's testimony supports a finding that Mr. Washington knowingly entered the Vannice garage unlawfully and for the purpose of committing a crime in that garage by taking the yard tools.
Although there was insufficient evidence from which a jury could determine that the Vannice garage by itself was an inhabitable structure or a part of the home's inhabitable structure, there was sufficient evidence from which a jury could determine that the garage by itself was a building. The jury's finding that Mr. Washington burglarized an inhabitable structure in this case necessarily supposes that he burglarized a building. That is because the term "building" encompasses the term "inhabitable structure" in this case. Although § 569.010 fails to define the term "building," that term generally means:
a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, *211 factory, shelter for animals, or other useful structure-distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy ...
WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 292 (1971).
So defined, the term "building" includes a garage such as the one in this case. Accordingly, we reverse Mr. Washington's conviction for first degree burglary, enter a conviction for second degree burglary, and remand the case for re-sentencing.
C. Unpreserved Points on Appeal
Conceding that he has failed to preserve his remaining points properly for appeal, Mr. Washington now asks us to review those points for plain error. In our discretion we may review plain errors "affecting substantial rights" when we find that "manifest injustice or miscarriage of justice has resulted" from the error. Rule 30.20. The exercise of our discretion analytically involves two steps. First, we decide "whether the claim of plain error is one that, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." State v. Bozarth, 51 S.W.3d 179, 181 (Mo.App. W.D.2001). If the error does not meet these criteria, we decline to exercise discretionary review under Rule 30.20. Id. If the error does meet these criteria, we then proceed to step-two, where "we review the claim to determine whether manifest injustice or a miscarriage of justice actually occurred." Id. Not all prejudicial error is plain error. Id. Plain error is "evident, obvious and clear" error. Id.
To warrant relief under plain error review, Mr. Washington must show more than prejudice resulting from the error; he must show "`manifest prejudice affecting [his] substantial rights.'" State v. Kidd, 75 S.W.3d 804, 812 (Mo.App. W.D. 2002).
On their face, Mr. Washington's allegations of error regarding the exclusion of expert testimony on witness identification and the propriety of closing argument do not establish "substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." Bozarth, 51 S.W.3d at 181. Accordingly, we decline to review these points for plain error here.
Mr. Washington's final point relates to the inadvertent submission of a duplicative converse instruction to the stealing count and the concomitant failure to submit a converse instruction to the burglary count. On its face, this error likewise does not establish "substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." Id. Mr. Washington observes that he is entitled to the submission of an applicable converse instruction, if requested. See, e.g., State v. Matthews, 37 S.W.3d 847, 852 (Mo.App. S.D.2001) (under Notes on Use to MAI-CR 3d 308.02 defendant is entitled to appropriate converse instruction upon written request).
The problem for Mr. Washington is that he never actually requested a converse instruction on the burglary count. He simply submitted one too many converse instructions on the stealing count and one too few on the burglary count. In any event, Mr. Washington has not met his burden to show that the omission resulted in "`manifest prejudice affecting his substantial rights.'" He simply declares that "it is evident that [he] sought to have a converse instruction given as to each of the offenses submitted to the jury" and concludes without any explanation that "manifest *212 injustice is shown and reversal is required." This is a non sequitur. Mr. Washington has not even suggested what the proposed converse instruction would have been, precluding us from determiningeven if we were so inclinedwhether his proposed converse instruction would have been appropriately submitted, if properly requested. Point denied.

IV. Conclusion
Because the State failed to establish that Mr. Washington burglarized an inhabitable structure while a non-participant was present under § 569.160.1(3), we reduce his burglary conviction to second degree burglary under Rule 84.14 and remand the case for re-sentencing in light of this reduction. In all other respects, we affirm.
HAROLD L. LOWENSTEIN, P.J., and JAMES M. SMART, JR., J. concur.
NOTES
[1] Unless otherwise indicated, all statutory references are to RSMo 1994.
[2] Of course, § 569.160.1(3), under which the State charged Mr. Washington in this case, expressly requires the presence of another person in the structure to elevate the crime to first degree burglary.
[3] A home also would qualify as a "building" but, as noted, the first-degree burglary instruction submitted to the jury (number 5) in this case used the term "inhabitable structure."
[4] All rule references are to Missouri Supreme Court Rules (2002).