

## Missouri Court of Appeals
### Southern District
### Division Two

STATE OF MISSOURI, )
)
              Respondent, )
) No. SD36716
   vs. )
) FILED: June 28, 2021
TOMMY R. MORRIS, )
)
             Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael J. Cordonnier, Judge

**AFFIRMED**

Tommy R. Morris ("Defendant") was convicted, following a bench trial, of two counts of the class C felony of delivery of a controlled substance, *see* section 579.020, and one count of the class A felony of second-degree murder, *see* section 565.021.[1] On appeal, Defendant challenges the trial court's denial of his motion for judgment of acquittal and his subsequent conviction on the second-degree murder count. Because Defendant's claim is without merit, we affirm.

### Factual and Procedural Background[2]

On April 17, 2018, during undercover surveillance as part of a narcotics investigation, members of the Springfield Police Department observed Defendant driving a white Hyundai

---

[1] All statutory references are to RSMo Cum.Supp. 2017, unless otherwise indicated.
[2] Our recitation of the facts is in accordance with our standard of review, *infra*.

1

("Defendant's vehicle") that matched the description of a suspect vehicle. Defendant was further surveilled and followed to a nearby Price Cutter grocery store where, while still in his vehicle, he attempted to engage with another in a controlled substance transaction.

The police then moved in, positioning their vehicles so as to attempt to box in Defendant's vehicle. One detective, wearing a black tactical vest with the word "POLICE" displayed in white letters on the front and back, exited his vehicle in front of Defendant and commanded Defendant to show him his hands. Defendant did not comply with the detective's command and, instead, maneuvered his vehicle so as to escape the police enclosure. After his escape, Defendant struck a grocery cart being pushed by a bystander as Defendant sped out of the grocery store parking lot.

After exiting the Price Cutter parking lot, Defendant continued to drive his vehicle in a reckless manner that enabled him to evade various members of law enforcement, who were either actively pursuing or searching for him. Then, while driving approximately seventy-eight-miles-per-hour in a thirty-five-mile-per-hour zone, Defendant drove through a red light and collided with the driver's side front door of a vehicle driven by D.S. ("Victim"). Victim succumbed to her injuries she received as a result of the collision and was pronounced dead at the scene.

Defendant was charged with one count of attempted delivery of a controlled substance (count 1), one count of delivery of a controlled substance (count 2), and one count of second-degree murder (count 3). In the latter count, which is relevant here, the State alleged by indictment as follows:

> The Grand Jurors of the County of Greene, State of Missouri, charge that the defendant, in violation of Section 565.021, RSMo, committed the class A felony of murder in the second degree, punishable upon conviction under Section 558.011, RSMo, in that on or about April 17, 2018, in the County of Greene, State

2

of Missouri, [Victim] was killed during a car crash as a result of the immediate flight from the perpetration of the class C felony of attempted delivery of a controlled substance under Section 579.020, RSMo and the class C felony of possession of a controlled substance with intent to deliver under Section 579.020, RSMo, committed by the defendant on or about April 17, 2018, in the County of Greene, State of Missouri.

At his bench trial, Defendant filed motions for judgment of acquittal at the close of the State's case and at the close of all of the evidence, arguing, in pertinent part, that "[t]he State has failed to prove the elements of the crime alleged in the information." The trial court denied these motions and, ultimately, found Defendant guilty and convicted him of all of the counts in the indictment. The trial court sentenced Defendant to two ten-year sentences (for counts 1 and 2) and a thirty-year sentence (for count 3), with the sentences to run concurrently.

Defendant timely appeals and raises a single point challenging the sufficiency of the evidence to support his conviction for second-degree murder under count 3. Additional relevant facts are provided, *infra*, as we discuss Defendant's point.

## Applicable Principles of Review and Governing Law

The standard of review for a motion for judgment of acquittal is the same as the standard used for reviewing a challenge to the sufficiency of the evidence. *State v. McQuary*, 173 S.W.3d 663, 666-67 (Mo.App. 2005). Under that standard, we review "whether the State has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." *State v. Hunt*, 451 S.W.3d 251, 257 (Mo. banc 2014). In so doing, we do not reweigh the evidence but, rather, consider it in the light most favorable to the verdict, granting the State all reasonable inferences. *Id.* Although contrary evidence and inferences are disregarded, this Court may not supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences. *Id.* To the extent that our review

involves the interpretation of a statute, that is an issue of law which we review de novo. ***State v. Perry***, 275 S.W.3d 237, 241 (Mo. banc 2009).

As applicable to the charge and Defendant's conviction under count 3, a person commits the offense of murder in the second degree if he or she:

> Commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony *or immediate flight* from the perpetration of such felony or attempted perpetration of such felony.

Section 565.021.1(2) (emphasis added).

### Discussion

In his sole point relied on, Defendant contends:

> The trial court erred in overruling [Defendant]'s motion for judgment of acquittal after all of the evidence for Count [3], and in entering judgment and sentence for the class A felony of murder in the second degree, because this violated Mr. Morris's rights guaranteed by the Due Process Clauses of the 14th Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that the victim in this case was not killed as a result of the perpetration or attempted perpetration of the charged felonies, and although [Defendant] fled from the Price Cutter parking lot, the victim was not killed as a result of the immediate flight; instead, the crash causing the victim's death occurred several miles away from Price Cutter.

We disagree.

In his argument, Defendant correctly notes that the word "immediate" as used in section 565.021.1(2) is undefined. "When construing a criminal statute, an appellate court is to give effect to the legislature's intent by examining the plain language of the statute." ***State v. Stewart***, 113 S.W.3d 245, 249 (Mo.App. 2003). In particular, we "look[ ] to whether the language is plain and clear to a person of ordinary intelligence." ***State v. Goddard***, 34 S.W.3d 436, 438 (Mo.App. 2000) (internal quotation marks omitted). "If no statutory definition is provided (as here),

appellate courts give words their plain and ordinary meaning, as supplemented (if necessary) with definitions from the dictionary." ***State v. Gilmore***, 508 S.W.3d 132, 134 (Mo.App. 2016).

Defendant proffers four dictionary definitions for "immediate" that he presupposes support his point. These definitions are (1) "acting or being without the intervention of another object, cause, or agency"; (2) "[n]ot separated by other persons or things"; (3) "occurring, acting, or accomplished without loss of time:  made or done at once:  instant"; and (4) "[o]ccuring without delay; instant" (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1129 (2002) (definitions (1) and (3)) and BLACK'S LAW DICTIONARY 764 (2004) (definitions (2) and (4))).

Definitions (1) and (2) pertain to the *continuity* of events, whereas definitions (3) and (4) pertain to the *temporal space* in which one event follows another. Without explanation, however, Defendant ignores for the remainder of his argument definitions (1) and (2) and relies only on the latter two definitions, asserting that "the death was not 'made or done at once' or 'instant,' as required by the common definitions of 'immediately.'"

We need not resort to statutory construction, however, to resolve the difference between the two sets of definitions proffered by Defendant. While in isolation a word may be susceptible to more than one meaning, "its plain meaning is determined from its 'usage in the context of the entire statute.'" ***Holmes v. Steelman***, SC97983, 2021 WL 2445785, at *5 (Mo. banc June 15, 2021) (quoting ***State ex rel. Goldsworthy v. Kanatzar***, 543 S.W.3d 582, 585 (Mo. banc 2018)). "A court cannot look at single, separate words in a statute and then apply to each a definition untethered from its context." ***Id.*** at *5 (citing ***Kehlenbrink v. Dir. of Revenue***, 577 S.W.3d 798, 800 (Mo. banc 2019)).

As relevant here, section 565.021.1(2) provides that a person commits second-degree murder if "another person is killed as a result of the … immediate flight from the perpetration of such felony or attempted perpetration of such felony." If used in this context, definitions (3) and (4) of "immediate" would require that the killing must occur in the "instant" that the flight commences and would exclude any killing that occurred after that "instant" had passed, even though the defendant continued to flee. This is an illogical result that could not accurately reflect the intent of the legislature and, therefore, is not the plain meaning of "immediate" as used here.

Rather, it is clear from the context of the statute, applying definitions (1) and (2) for "immediate", that the legislature intended that the "immediate flight" in which a killing results plainly means the continuous and uninterrupted actions of a defendant in fleeing from the perpetration or attempted perpetration of a felony.

With the plain meaning of "immediate flight" in section 565.021.1(2) in mind, we turn to the relevant facts of this case. Following his possession of and attempted delivery of a controlled substance, Defendant fled from the Price Cutter parking lot, which resulted in a high-speed pursuit and search involving several law enforcement officers. Initially, Officer Jeron Tauai was in close, direct pursuit of Defendant and was driving a police vehicle with activated lights and sirens. Because of the high speed and erratic turns of Defendant's vehicle, Officer Tauai lost visual contact with it and, thereafter, deactivated his lights and sirens while continuing to attempt to relocate it.

In addition, several other law enforcement officers were actively monitoring the roads in the vicinity of Officer Tauai's last reported sighting of Defendant. Two officers, Michael Ramsey and Neal McAmis, acquired visual contact of Defendant's vehicle on the same street that it was on when Officer Tauai lost sight of it. The officers observed that Defendant was still

traveling at a "high rate of speed" and ignoring traffic signs and signals. While attempting pursuit, Officer McAmis witnessed the Defendant's vehicle speed through a stop light resulting in the "massive" and "catastrophic" collision with the vehicle operated by Victim.

Approximately forty-five seconds after he lost sight of Defendant's vehicle and having reactivated his lights and sirens, Officer Tauai came within visual range of the location of the collision and observed, as he crested a hill about six blocks away, the back of Defendant's vehicle rise upright in the air from the force of colliding with Victim's vehicle and a lot of smoke and debris from the collision. Within seconds following the collision, several law enforcement officers, who had been closing in on their search for Defendant's vehicle, including Officer Tauai, converged on the scene.

The route that Defendant drove between fleeing the Price Cutter parking lot and his collision with Victim's vehicle was approximately 3.4 miles long. It takes approximately 8 minutes and 44 seconds to drive the route without exceeding the speed limit. The speed of Defendant's vehicle, at times during Officer Tauai's pursuit and at the time of the collision, however, was more than twice the speed limit.

In his attempt to demonstrate that his "immediate" flight had ended by the time of his collision with Victim's vehicle, Defendant relies upon the length of the route, the amount of time elapsed, and Officer Tauai deactivating his lights and sirens when he lost visual sight of Defendant's vehicle. None of those, however, served to interrupt the continuity of Defendant's actions in his flight from police that began in the Price Cutter parking lot and ended only in his collision with Victim's vehicle. Defendant's flight was "immediate," according to the plain meaning of that word as used in section 565.021.1(2), in that it was "without the intervention of

7

another object, cause, or agency" and "[n]ot separated by other persons or things" until, ultimately, his fatal collision with Victim's vehicle. Definitions (1) and (2), *supra*.

Accordingly, there was sufficient evidence from which to convict Defendant of the second-degree murder charge, and the trial court did not err in denying his motion for judgment of acquittal or in convicting him of that charge. Point denied.

## **<u>Decision</u>**

The trial court's judgment is affirmed.

GARY W. LYNCH, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS