**STATE of Missouri, Respondent,**

v.

**Tyrone E. HENDERSON, Appellant.**

**No. WD 60952.**

Missouri Court of Appeals,
Western District.

March 18, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 27, 2003.

**15.** *Fisher v. Waste Mgmt. of Missouri,* 58    S.W.3d 523, 527 (Mo. banc 2001).

David C. Hemingway, Assistant State Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joel A. Block, Asst. Atty. Gen., Jefferson City, for Respondent.

PAUL M. SPINDEN, Judge.

Tyrone E. Henderson was tried by a jury and found guilty of first-degree murder, armed criminal action, and unlawful use of a weapon. In this appeal, he challenges the circuit court's judgment on the ground that it abused its discretion in admitting evidence of other, uncharged criminal conduct. We find an abuse of discretion resulting in error that was outcome-determinative and, therefore, reverse the circuit court's judgment.

The jury convicted Henderson of killing Anthony Barela at Barela's Kansas City house on November 25, 2000. While Barela talked to Henderson at the front door, Shantee Douglas, a friend of Barela was putting away groceries in the kitchen. Douglas heard five or six gunshots. She tried to remove a barricade from the rear kitchen door to escape from the house when Henderson approached her, pointed a gun at her, and told her not to move. Barela began making noises, and Henderson returned to the front of the house and fired several more shots. Douglas was able to remove the barricade and escaped into the back yard where she hid. When she saw Henderson leave, she returned to the house and called for emergency assistance. Barela suffered 20 gunshot wounds and did not survive.

Later, Douglas identified Henderson as the shooter when officers showed her several photographs. During Henderson's trial, she again identified him as the person who killed Barela. She also testified that, although she was "not good with guns," the weapon Henderson used was "a black gun . . . something like a Uzi . . . [with a] clip up under it."

Three days after Barela's shooting, police conducted an unrelated undercover operation of illegal drug dealing. During the operation, Officer Donald Stanze saw Henderson approach a group of people and fire a gun toward the group. Someone in the group returned fire, and Henderson got back in his vehicle and drove away. Stanze followed Henderson's car.

As he followed the car, Stanze radioed for assistance and officers Michael Curley and Josh Davis responded. They saw Henderson's car, traveling at high speed, run several traffic signals. Curley and Davis pursued Henderson's car, and, after a brief chase, Henderson stopped his vehicle, jumped out, and ran away. Curley and Davis chased him. During the chase, Curley saw Henderson remove an "Uzi type firearm" and discard it. Davis quit chasing Henderson to guard the discarded gun. Curley caught Henderson and arrested him. Ballistic evidence indicated that the gun that Henderson had discarded was the

same weapon that had been used to kill Barela.

Henderson unsuccessfully petitioned the court by motion *in limine* and objection during his trial to exclude any evidence regarding the uncharged misconduct of November 28. Concerning Henderson's motion *in limine*, the state argued that the evidence was admissible to establish identity or present a complete and coherent picture of the charged crime. The circuit court asked the state to explain how it would be hampered if the evidence were limited to the foot chase preceding the arrest, evidence that Henderson conceded was admissible. The state argued that it was concerned that the jury would be left without a complete picture of why police were chasing Henderson—that it would appear that they were chasing him for no apparent purpose. The court agreed and, despite its concern of undue prejudice, overruled Henderson's motion and later objection to the evidence.

■■■ We accord the circuit court discretion in identifying evidence as admissible or inadmissible, and we will declare error only when we deem the circuit court to have abused its discretion. *State v. Mayes*, 63 S.W.3d 615, 627 (Mo. banc 2001). The circuit court abuses its discretion in this area when its ruling clearly is not logical under the circumstances and is sufficiently unreasonable as to shock the sense of justice and indicate a lack of careful consideration. An abuse of discretion occurs only when no reasonable jurist would concur with the circuit court's ruling. *State v. Gardner*, 8 S.W.3d 66, 73 (Mo. banc 1999).

■■■ Countervailing the breadth of the circuit court's discretion in identifying whether evidence of this sort is admissible is the highly prejudicial nature of evidence of uncharged illegal conduct. In considering such evidence, the circuit court must be rather strict and circumspect and should rule it admissible only when it is clearly so. *State v. Pennington*, 24 S.W.3d 185, 189–90 (Mo.App.2000). This is because such evidence may cause a jury to convict a defendant on the basis of perceived propensities rather than on the basis of substantial and competent evidence. Only when evidence of uncharged misconduct clearly is logically and legally relevant to establishing the defendant's guilt of the crime for which he is on trial is it admissible. *State v. Barriner*, 34 S.W.3d 139, 144 (Mo. banc 2000). Evidence is logically relevant "if it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial," and legally relevant "if its probative value outweighs its prejudicial effect." *Id.* at 144–45.

■■■ Several well-recognized exceptions allow admission of evidence of uncharged misconduct: If it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan, identity, or signature modus operandi. *Mayes*, 63 S.W.3d at 629. Evidence of uncharged misconduct that is part of a sequence of events surrounding the charged offense is also admissible if it helps present a complete and coherent picture of the events that transpired. *State v. Morrow*, 968 S.W.2d 100, 107 (Mo. banc), *cert. denied*, 525 U.S. 896, 119 S.Ct. 222, 142 L.Ed.2d 182 (1998).

The circuit court erred in admitting evidence of Henderson's uncharged shooting into the group on November 28. The circuit court admitted it so the jury would understand why police were running after Henderson. Evidence of his shooting into the group did not have a legitimate tendency of establishing directly Henderson's guilt of the charges for which he was on trial. Its prejudice in permitting the jury

to convict Henderson on the basis of perceived propensities to commit a crime far outweighed its probative value. Permitting the officers to testify—as Henderson agreed would be acceptable—that they were chasing Henderson after seeing his car travel at high speed and violate several traffic signals would have provided the jury with sufficient information. Henderson not only conceded that evidence of his flight was admissible, but he also agreed not to oppose the state's eliciting Stanze's testimony that he saw Henderson with a gun in his hand before chasing him. The jury did not need to hear evidence of Henderson's shooting into the group to understand why officers were chasing him.

■ Nevertheless, that the circuit court specified an erroneous basis for admitting the evidence does not mean that reversible error automatically results. We will uphold the circuit court if its ruling was otherwise correct on a basis supported by the record and the law. *See State v. Davis,* 71 S.W.3d 659, 665 (Mo.App.2002). While Henderson contends that the evidence of the November 28 shooting was inadmissible on any basis, the state contends that it was admissible to establish identity.

■ Following *State v. Bernard,* 849 S.W.2d 10, 17 (Mo. banc 1993), this court held that evidence offered under the identity exception must meet the same test for admission as that offered under the newly-recognized signature *modus operandi* exception; *i.e.,* that the offenses are so similar and unique as to constitute the signature of the accused. *Anthony,* 881 S.W.2d at 660; *State v. Vowell,* 863 S.W.2d 954, 957 (Mo.App.1993). As the Supreme Court explained in *Bernard:*

> The signature *modus operand[i]*/corroboration exception approximates the long established, well recognized exception

that allows evidence of prior uncharged misconduct for the purpose of proving the identity of the wrongdoer.... For the prior conduct to fall within the identity exception, there must be more than mere similarity between the crime charged and the uncharged crime. The charged and uncharged crimes must be nearly "identical" and their methodology "so unusual and distinctive" that they resemble a "signature" of the defendant's involvement in both crimes.

*Bernard,* 849 S.W.2d at 17. *See also* E. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE §§ 3:10–3:12 (rev. ed.2001).

Since *Bernard,* the Supreme Court has occasionally referred to identity and signature *modus operandi* corroboration as distinct exceptions. *Mayes,* 63 S.W.3d at 629; *State v. Roberts,* 948 S.W.2d 577, 591 (Mo. banc 1997), *cert. denied,* 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). In other cases, however, it has reaffirmed that they are quite similar, *Barriner,* 34 S.W.3d at 145; *State v. Conley,* 873 S.W.2d 233, 236 (Mo. banc 1994), and has even intimated that identity is subsumed within the latter. *See State v. Gilyard,* 979 S.W.2d 138, 140–41 (Mo. banc 1998). But in any event, regardless of what the exception is called or what it may resemble, the analysis governing admission of such evidence remains unchanged following *Bernard.* This is the standard we must follow. Mo. CONST. art. V, § 2.

Applying the standard enunciated in *Bernard,* the evidence of the November 28 shooting clearly was not admissible for the purpose of establishing identity. This is a point on which reasonable minds cannot differ.

The charged and uncharged offenses were not nearly identical, nor even similar for that matter. The charged offense involved a targeted victim's being shot 20

times while the uncharged offense involved a group of persons who were randomly shot at as they stood in the street. We discern nothing unique or distinctive about the methodology used to commit the charged and uncharged offenses. That a gun was fired in both instances is hardly unique or distinctive in method, certainly at least not enough to qualify as one's signature.

■ Yet, even were we not obligated to follow the standard for admission set forth in *Bernard,* we would still find an abuse of discretion under the facts of this case. Although Henderson's identity as the perpetrator was at issue, evidence of uncharged misconduct should be admitted only if it is strictly necessary. *Pennington,* 24 S.W.3d at 190. This was not the case here. As previously noted, Henderson conceded that evidence of his flight was admissible and even agreed to Stanze's testifying that he had seen Henderson with a gun in his hand before chasing him. If the state's purpose in offering the evidence was to establish identity rather than Henderson's propensity to commit crime, its purpose could have been accomplished without eliciting the highly prejudicial testimony that Henderson fired the gun into a crowd. That he subsequently possessed the murder weapon and exercised control over it would have been equally probative concerning his identity as showing that he possessed the murder weapon and used it to shoot into a group of people. That he fired the weapon into a crowd added virtually nothing of probative value and certainly did not overcome the extreme prejudice.

■ An abuse of discretion in admitting improper evidence, however, warrants a new trial only if the admission prejudiced Henderson to the extent that we conclude, with reasonable probability, that the evidence altered the trial's outcome. *Barriner,* 34 S.W.3d at 150. As the Supreme Court has explained:

> There is a distinction between evidence-specific and outcome-determinative prejudice. When the prejudice resulting from the improper admission of evidence is only evidence-specific and the evidence of guilt is otherwise overwhelming, reversal is not required. In contrast, when the prejudice resulting from the improper admission of evidence is outcome-determinative, reversal is required. A finding of outcome-determinative prejudice "expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence."

*Id.*

This evidence prejudiced the trial's outcome. Although the state presented other evidence tending to suggest Henderson's guilt—Douglas' identification and Henderson's subsequent possession of the murder weapon—it was not overwhelming. The jury heard evidence that the weapon seized from Henderson was the murder weapon, but Douglas was the only evidence that Henderson was the one who shot the gun. Henderson attempted to cast doubt on Douglas' credibility by showing her use of PCP and that she had been twice convicted of felonies and was on probation.

Taken as a whole and weighing the properly admitted evidence against that improperly admitted, we conclude that the probability that the jury would have reached a different conclusion but for the error is clear. The evidence properly admitted, while suggesting his guilt, was not overwhelming. At the same time, the highly prejudicial evidence of the un-

charged shooting was not inadvertently introduced, nor was it casual or vague. Indeed, it was referenced to the degree that it could not have escaped the jury's notice. During Stanze's brief testimony, he referred eight times to Henderson's firing the gun at the group, and, during closing argument, the state reminded the jury of Stanze's testimony that he had seen Henderson firing the gun. Given the state's heavy emphasis of this inadmissible evidence, we are certain of our conclusion that the evidence made a difference in the outcome of Henderson's trial.

We, therefore, reverse the circuit court's judgment and remand the cause for a new trial.

RONALD R. HOLLIGER, Presiding Judge, and JAMES M. SMART, Judge, concur.