**STATE of Missouri, Plaintiff–Respondent**

v.

**James A. McGEHEE, Defendant–Appellant.**

**No. 26138.**

Missouri Court of Appeals, Southern District, Division Two.

Feb. 24, 2005.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Presiding Judge.

James A. McGehee (defendant) was convicted, following a jury trial, of stealing a firearm, a class C felony. § 570.030.[1] Defendant was charged as, found to be, and sentenced as a prior offender. *See* § 558.016.2. This court affirms.

On March 23, 2003, defendant, Jeffrey Straw, and Casey Jowers, Jeffrey's girlfriend, were at the home of Jeffrey's mother and stepfather in Seligman, Missouri. Jeffrey's mother and stepfather were out of town. Later, Heather Garrison joined the others at the residence. Jeffrey's stepfather, Tim Pritchett, kept a .380 pistol in a drawer in his bedroom. He had locked the bedroom door before he left the residence.

Jeffrey, Casey, Heather, and defendant decided to go to Casey's house in Sarcoxie, Missouri. Jeffrey and Casey rode in one car. Defendant and Heather rode in Heather's car. While in Heather's car, defendant showed her a pistol he was carrying but told her not to tell Jeffrey; that Jeffrey would be mad if he knew defendant had the pistol. Defendant said he needed the pistol because "some people" were after him, Jeffrey and Casey.

The group decided to stop at a Wal-Mart Supercenter in Monett. The women went to one area of the store, the men to another. While in the store, Heather saw defendant take a BB gun out of a package and put it into his pants, along with some

---

1. References to statutes are to RSMo 2000.

air cartridges. The Wal–Mart manager, Justin Hinkle, was in the store at the time Jeffrey, Casey, Heather, and defendant were there. The group was reported to him as possible theft suspects.

Heather and Casey left the store and sat in Heather's car. Defendant came from the store and told Casey he needed to take her car to pick up Jeffrey at the entrance. Hinkle watched defendant leave the store. He then saw defendant drive Casey's car to the store entrance. Hinkle also observed Jeffrey. Jeffrey was involved in an argument in the store about cigarettes for which he refused to pay.

Jeffrey left the store. He got into the car with defendant. Hinkle watched as the car drove away. He was asked if defendant did anything. He answered, "He waived [sic] a gun." Hinkle said the gun was black. He called the police.

Defendant and his friends stopped their cars at a gasoline station about a mile from the Wal–Mart store. Defendant placed the BB gun in Heather's car between the seats by the console. Shortly afterward, four police officers arrived. The officers asked to look for "[s]tuff that had been stolen from Wal–Mart." Heather told them where the BB gun was. She explained, "I told them where the BB gun was, at first. And then I told them where the real gun was at."

■ Defendant presents one point on appeal. He contends the trial court erred in overruling objections of his trial counsel to the evidence presented regarding events at Wal–Mart; that the objections should have been sustained in that the evidence related to uncharged offenses. Defendant argues it was prejudicial for the state to present evidence regarding the theft of a BB gun at Wal–Mart and the waving of the gun to threaten Wal–Mart employees.

■ "As a general rule, evidence of a crime other than the crime charged is inadmissible." *State v. King,* 588 S.W.2d 147, 150 (Mo.App.1979). Exceptions to this general rule include the parallel exception.

The parallel exception permits evidence of separate crimes to be admitted if they are part of a continuing occurrence intimately connected with the crime for which a defendant is being tried. *State v. Weatherspoon,* 728 S.W.2d 267, 272–73 (Mo.App.1987). "[T]he state is permitted to paint a complete and coherent picture of the crime charged and it is not required to sift and separate the evidence and exclude the testimony tending to prove the crime for which [a] defendant is not on trial." *State v. King,* 588 S.W.2d 147, 150 (Mo.App. 1979). *See also State v. Criswell,* 907 S.W.2d 303, 305 (Mo.App.1995); *State v. Harper,* 855 S.W.2d 474, 477 (Mo.App. 1993); *State v. Higdon,* 844 S.W.2d 99, 102 (Mo.App.1992); *State v. Robinson,* 834 S.W.2d 246, 249 (Mo.App.1992); *State v. Johnson,* 753 S.W.2d 576, 581 (Mo.App.1988).

*State v. Wright,* 934 S.W.2d 575, 583 (Mo. App.1996).

Prior to trial, the judge denied a motion in limine directed to the issue raised by this appeal and during the course of the trial overruled defendant's objections to testimony related to the events that occurred at Wal–Mart. In denying the motion in limine, the trial judge stated the belief that the jury would not be confused by evidence of what occurred at Wal–Mart; that the events there occurred within a short time after the pistol that was the subject of the trial was stolen and had been part of a continuous series of activities that took place after the theft and before defendant was arrested. He suggested, "[A]s far as the overall picture, it's

kind of hard to imagine how you allegedly steal something in Seligman and the next thing, you pop up at the gas station [at Monett]." The trial judge suggested that inclusion of evidence about the activities at Wal–Mart was acceptable; "that the jury's entitled to be painted an entire picture."

Defendant argues that the trial court ruling is in conflict with *State v. Henderson,* 105 S.W.3d 491 (Mo.App.2003); that the holding in *Henderson* requires reversal of defendant's conviction. *Henderson* reversed convictions for first-degree murder, armed criminal action, and unlawful use of a weapon. The offenses were alleged to have been committed November 25, 2000. The defendant in *Henderson* had been identified by a witness to the shooting. The witness also described the weapon used in the crime as "a black gun ... something like a [sic] Uzi ... [with a] clip up under it." *Id.* at 494.

Three days later, on November 28, a police officer saw Henderson approach a group of people and fire a gun toward the group. He observed someone in the group return fire. The officer followed Henderson as he drove away. After a high-speed chase that included Henderson running several traffic signals, Henderson stopped his vehicle and fled on foot. Two of the police officers who had participated in the automobile pursuit of Henderson ran after him. During the foot race, Henderson was observed removing and discarding an "Uzi type firearm." *Id.* Henderson was caught and arrested. The firearm he had discarded was seized and later determined to be the same weapon used in the November 25 killing. At trial, evidence of what occurred on November 28 was admitted in evidence over Henderson's objection. The state argued it was admissible to establish Henderson's identity "or present a complete and coher-

ent picture of the charged crime." *Id.* at 495.

*Henderson* held:

The circuit court erred in admitting evidence of Henderson's uncharged shooting into the group on November 28. The circuit court admitted it so the jury would understand why police were running after Henderson. Evidence of his shooting into the group did not have a legitimate tendency of establishing directly Henderson's guilt of the charges for which he was on trial. Its prejudice in permitting the jury to convict Henderson on the basis of perceived propensities to commit a crime far outweighed its probative value.

*Id.* at 495–96.

Defendant contends the same rationale applies with respect to the evidence admitted concerning what occurred at Wal–Mart; that the evidence did not have probative value regarding the theft of the pistol from the home in Seligman. He contends it was prejudicial in that it permitted the jury to conclude he had the propensity to commit the crime with which he was charged because he committed the later offenses for which he was not on trial. This court disagrees.

The events at Wal–Mart occurred the same day that defendant left the Seligman residence from which the firearm that was the subject of the trial was taken. The occurrence at Wal–Mart is what focused attention on defendant. It was those events that resulted in police officers learning that a theft had occurred at Seligman earlier that day. Events that unfolded as a result of the Wal–Mart incident revealed that defendant was responsible for the theft.

In *Henderson,* the crimes for which defendant was on trial were committed three days before officers observed him and ar-

rested him. The identity of the defendant in the case was already known. His subsequent conduct played no part in the series of events that led to the discovery of the crime he committed or his involvement in the offense.

In this case, defendant had been in the presence of the three persons who were with him at Wal–Mart since leaving the Seligman residence where the theft of the pistol occurred. He had shown the pistol to Heather Garrison and placed the weapon in her car in the course of the journey from Seligman to the Wal–Mart store in Monett. The events that occurred at Wal–Mart and at the gasoline station where defendant was apprehended were part of a continuum of activities that linked the stolen pistol to defendant and assisted in confirming his culpability. The proximity of those events to the time when the pistol was taken was part of the picture the state was entitled to paint for the jury. The trial court did not abuse its discretion in allowing the evidence. Defendant's point on appeal is denied. The judgment is affirmed.

BATES, C.J., and BARNEY, J., concur.