**STATE of Missouri, Respondent,**

v.

**Michael JACKSON, Appellant.**

**No. WD 66199.**

Missouri Court of Appeals, Western District.

July 17, 2007.

Rebecca L. Kurz, Appellate Defender, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO for Respondent.

Stephanie L. Wan, Asst. Attorney General, Jefferson City, MO, joins on the briefs for Respondent.

Before PAUL M. SPINDEN, P.J., PATRICIA A. BRECKENRIDGE, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Michael Jackson appeals his conviction for one count of tampering in the first degree in violation of section 569.080.1(2).[1] Jackson's one point on appeal concerns the admission of evidence that he committed an uncharged burglary. We affirm.

## Procedural and Factual Background

On the morning of March 1, 2000, at about nine o'clock, James A. Lee was returning to his home after being gone. He arrived at his home in Lathrop, Missouri, and saw a white Chevrolet Silverado pickup truck backed up to his front door. He saw a man he did not know run out of his house and put something in the back of the truck. At that point, he realized his house was being burglarized.

Lee pulled his minivan up into his driveway and drove right up to the bumper of the white pickup, attempting to block the truck from leaving. He then saw two men coming from his house carrying his television set. The two men did not make it all the way out of the house, they only made it to the hallway where they dropped the television. One man ran out of the house and got into the driver's seat of the truck, while the other ran back inside the house. At that point, Lee was face to face with the driver (whom he later identified as Jackson) for about a minute while the driver attempted to start the truck.

The driver finally did get the truck started, and Lee became afraid that the truck was going to ram his van, so he pulled out of the driveway, allowing the pickup truck to drive around toward the back of the house. The truck then came back around to the front of the house and drove out toward Interstate 35.

The pickup was soon seen on I–35 traveling at about ninety miles per hour. Officers pursued the pickup. The truck failed to make a left turn and hit a fence. An officer then saw two men emerge from the vehicle and head west on foot. The suspects were apprehended, hiding separately in ditches. Jackson was one of the men arrested.

Officers inspecting the truck noticed that the steering column had been cracked and the protective housing around the ignition switch was broken. It was determined that the truck belonged to George Kawakami. He had not given permission to anyone to take it, and all keys to the truck were located in his house. When he called the police to report it missing, the police informed him that they had already found it. Kawakami identified the truck as his, but noted that it was not damaged when he last saw it.

Jackson was charged with tampering in the first degree in violation of section 569.080.1(2) for the operation of and the damage to the truck.[2] He was not in this case charged with burglary or any theft crimes involving Lee's home. A trial was held on October 17 and 18, 2005.[3] The

---

1. All statutory references are to the Revised Statutes of Missouri 2000.

2. Section 569.080.1 states:
 A person commits the crime of tampering in the first degree if:
 . . . .
 (2) He or she knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle without the consent of the owner thereof.

3. This was actually Jackson's second trial. He was convicted after the first trial, but the motion court found that he had received ineffective assistance of counsel under Rule 29.15 and granted him a new trial.

above-outlined evidence was produced, and the jury found Jackson guilty of tampering in the first degree. The court sentenced him as a persistent offender, as defined by section 558.016, to fifteen years in the Missouri Department of Corrections. Jackson now appeals to this court.

## Discussion

 Jackson's sole point on appeal concerns the admission of evidence about the burglary committed at Lee's house as evidence of uncharged crimes. The trial court has broad discretion to admit or exclude evidence. *State v. Pennington*, 24 S.W.3d 185, 189 (Mo.App.2000). This decision will not be disturbed on appeal absent a clear abuse of discretion. *Id.* This discretion is abused when the ruling is clearly against the logic of the circumstances then before the court and sufficiently unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Henderson*, 105 S.W.3d 491, 495 (Mo.App.2003).

 Generally, evidence of uncharged crimes is inadmissible for the purpose of showing the defendant's propensity to commit crimes. *State v. Simms*, 131 S.W.3d 811, 816 (Mo.App.2004). The rationale behind this is that such evidence may cause a jury to convict the defendant on the basis of propensities to commit such crimes without regard to whether he or she is actually guilty of the crime charged. *Pennington*, 24 S.W.3d at 189.

 However, evidence of uncharged misconduct is admissible if it is both logically and legally relevant. *Henderson*, 105 S.W.3d at 495. Evidence is logically relevant if it has some legitimate tendency to establish the defendant's guilt of the crime for which he is charged. *Id.* Evidence is legally relevant if its probative value outweighs its prejudicial effect. *Id.* There are several recognized exceptions that make the evidence of uncharged misconduct logi-

cally relevant. These exceptions include when the evidence tends to establish: motive; intent; the absence of mistake or accident; a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or the identity of the person charged with the commission of the crime for which he is on trial. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Evidence of uncharged misconduct can also be logically relevant if it is part of a sequence of events surrounding the charged offense and necessary to present a complete and coherent picture of the events that transpired. *Henderson*, 105 S.W.3d at 495. Even if the evidence of the uncharged misconduct does not fall within one of these generally recognized exceptions, it may still be admissible if it is logically and legally relevant. *Bernard*, 849 S.W.2d at 13.

 The State argues that the evidence of the burglary of Lee's home was admissible because (1) it was evidence of a common scheme or plan, (2) it was necessary to paint a complete picture of the charged offense and the events that transpired, and (3) it was necessary to establish the identity of Jackson as the perpetrator. We agree with both (2) and (3). Without evidence of the burglary, it would not be clear why the police were chasing the pick-up and why the pick-up occupants might have hidden from police. When Kawakami called to report that his truck had been stolen, the police had already recovered it. The truck had not, until Kawakami called, been reported stolen. Thus, the evidence was necessary to explain the officers' conduct in chasing and arresting Jackson. *See State v. Joos*, 966 S.W.2d 349, 354 (Mo.App.1998); *see also State v. Tomlin*, 830 S.W.2d 31, 34 (Mo.App.1992) (Evidence of uncharged misconduct was admissible "to explain a police officer's conduct

[and] to give continuity to the police officer's action[.]").

 Also, without the testimony of Lee that he could identify Jackson as the driver of the pick-up at his house, the State would have had less evidence that Jackson was guilty of tampering. It would be confusing to the jury to present the identification testimony of Lee without presenting the circumstances of the identification.

 Finally, we also believe the evidence of the burglary tended to help prove that Jackson was guilty of "knowingly" tampering with the truck. The evidence was useful to show that Jackson and the other perpetrator were jointly engaged in a mission to commit burglary and, one would infer, appropriated the vehicle as a tool for the burglary. Such evidence served to show that, regardless of how the vehicle was removed from its owner in the first place, and whether it was taken by one of the men or both of them, there was reason to believe that the two men were co-venturers acting in concert in this unlawful purpose of planning and performing a burglary, and, thus, both were guilty of *knowingly* possessing, using, operating, and damaging the vehicle. *See* section 569.080.1. The proof of the burglary reduced the likelihood that a juror might wonder if there was any evidence that Jackson *knew* that the truck had been taken from the owner without permission. If the evidence showed only that Jackson drove the truck or rode in it, and there was no evidence of the burglary, there would not have been the same strong inference that he "knowingly" participated in using the truck without the permission of the owner. Thus, the logical relevance of

the evidence outweighed any prejudicial effect.[4]

For these reasons, we hold that the evidence was properly admitted. The trial court did not err in admitting the evidence. The judgment is affirmed.

SPINDEN and BRECKENRIDGE, JJ., concur.

---

4. The State introduced certain evidence concerning the burglary, such as evidence about what items were taken, that was probably unnecessary. The fact that it was necessary to introduce evidence of the burglary at Lee's house does not mean that the evidence of the details was necessary. However, Jackson fails to show that such arguably unnecessary evidence was prejudicial, given that the jury would necessarily be aware of Jackson's involvement in the burglary.