

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103010 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Ste. Genevieve County |
| vs. | ) | |
| | ) | |
| ORLANDO NAYLOR, | ) | Hon. Wendy Horn |
| | ) | |
| Appellant. | ) | FILED: June 21, 2016 |

Introduction

Appellant Orlando Naylor ("Naylor") appeals from the judgment of the trial court convicting Naylor as a prior and persistent offender of first-degree burglary, misdemeanor stealing, and driving with a revoked license in connection with the theft of cash located in the interior office of a restaurant. On appeal, Naylor contends that (1) the trial court erred in overruling his motion for judgment of acquittal for the charge of first-degree burglary because the State failed to present sufficient evidence from which a reasonable juror could have found that Naylor knowingly entered unlawfully into the office area of the restaurant; (2) the trial court erred in overruling his motion for judgment of acquittal for the charge of first-degree burglary because the State failed to present sufficient evidence that any other person was present in the office at the time he entered and took money; and (3) the trial court abused its discretion in

allowing testimony regarding a different theft and an attempted theft that occurred on the day before the crimes with which Naylor was charged.

Because the door to the room which Naylor entered was clearly marked with a sign reading "office" and was located at the end of a hallway, the State presented sufficient evidence from which a rational juror could reasonably infer that Naylor knew the office was not open to the public, and thus, that he was aware his entry into the office was unlawful. Because the State presented no evidence that Giesler or anyone else was present in the "room"—specifically the office—that Naylor unlawfully entered, either at the time he entered the office, during the time he remained in the office, or at the time he fled therefrom, the State failed to present sufficient evidence to support Naylor's conviction for first-degree burglary. However, the record contains sufficient evidence from which a jury could have found each of the elements necessary to convict Naylor of second-degree burglary. Finally, because the circumstances of a prior theft and an attempted theft in which Naylor was involved tended to establish Naylor's identity as the man who committed the crime for which he was charged, the trial court did not abuse its discretion in admitting the evidence.

Accordingly, we affirm the judgment of the trial court with respect to Points One and Three and reverse the judgment of the trial court with respect to Point Two. We vacate Naylor's conviction for first-degree burglary, enter a conviction for second-degree burglary, and remand the case for re-sentencing.

Factual and Procedural History

Naylor was arrested and charged as a prior and persistent offender with one count of first-degree burglary (Count I), one count of stealing (Count II), and one count of driving with a revoked license (Count III). Count I charged that Naylor committed first-degree burglary "in

2

that on or about May 16, 2014, in the County of Ste. Genevieve, State of Missouri, the defendant knowingly [entered] unlawfully in a room in a building not open to the public, located at 17033 New Bremen Road and owned by Melissa Giesler, for the purpose of committing stealing therein, and while in such (*sic*) there was present in such building Melissa Giesler, a person who was not a participant in the crime." The case proceeded to a jury trial.

I.     **Pretrial Matters**

Prior to trial, the State filed a "motion in limine regarding uncharged prior bad acts to establish motive, intent, absence of mistake, identity, and common scheme or plan, and complete and coherent picture." The State's motion in limine requested the trial court to allow evidence regarding a theft of cash from the Farm Fresh Store and an attempted theft from the Sandwich Shop, one day before Naylor allegedly burglarized Missy's Restaurant. Specifically, the motion alleged that on May 15, 2014, in Collinsville, Illinois, a man whose appearance is similar to that of Naylor was seen on video entering the Farm Fresh Store and taking a bag of money from the back office. The motion further alleged that shortly after the theft from the Farm Fresh Store, a person resembling Naylor, wearing the same clothes as the person from the Farm Fresh video and the person from the Missy's Restaurant video, entered the Sandwich Shop in Collinsville, Illinois. The man was confronted by employees before leaving in a car that resembled the car in the Farm Fresh video and the Missy's Restaurant video.

With respect to the issue of identity, the State argued that because the evidence from the Farm Fresh Store and Sandwich Shop incidents provided clearer descriptions of the vehicle and clothing of the suspect, and because the suspect in the Missy's Restaurant surveillance video was wearing the same clothes as the man seen in the Collinsville incidents, had a similar distinct voice, and was seen driving a similar car, the evidence was admissible to prove identity. The

3

trial court ruled that, while the issue was a "close call," testimony regarding the two incidents in Illinois would be admitted into evidence. In particular, the trial court was persuaded that the evidence should be admissible as identity evidence.

## II. Trial

Viewed in the light most favorable to the jury's verdict, the following evidence was adduced at trial. Giesler, the owner of Missy's Restaurant, arrived at the restaurant at 6:00 A.M. on May 16, 2014. Giesler left her purse, which contained $165, on a desk in the office area of the restaurant while she worked. Giesler testified that the office is not open to the general public. Testimony and photographic exhibits presented at trial revealed the following facts about the location and characteristics of the office. The office door had a sign on it that read "office." A short hallway led from the public restaurant area to the office. The hallway was lined with lockers on one side and an area for hanging clothes and coats on the other. The office was inaccessible from outside the building. The building featured a "side door" that led directly outside. However, this side door was kept locked with a deadbolt from the inside, such that it could only be unlocked from the inside. The side door did not lead directly into the office, but rather, opened to a "secondary office"[1] which in turn led to the office where Giesler's purse was kept.

Giesler testified that she was present in the restaurant all day on May 16, 2014, from 6:00 A.M. to 9:00 P.M. When Giesler went to the office to collect her purse at 9:00 P.M., she discovered that the money was gone. Giesler also discovered that the side door, which was always kept locked, was unlocked. Giesler contacted Mitzi Aufdenberg ("Aufdenberg"), the

---

[1] This room was also referred to as a "store room."

manager of a truck stop adjacent to Missy's Restaurant, and asked her to check the surveillance video from that day.

The truck stop surveillance video showed a man pulling his car into the truck stop, exiting, vanishing from the field of view, and later returning to the car. The surveillance video from outside Missy's Restaurant showed the same man exiting the restaurant through the side door. Both videos were admitted into evidence as State's Exhibits 15 and 16 and played for the jury. State's Exhibit 16 and State's Exhibit 17, still photographs taken from the surveillance video, showed that the man's car was orange with racing stripes.

On May 30, 2014, Officer Jerod Darnell ("Officer Darnell") pulled Naylor over for a traffic stop. Naylor was driving a 2001 Pontiac Grand Prix with a license plate of "PH5 U6Y." Officer Darnell's partner recognized Naylor's car as matching the description of the car captured by the surveillance video outside Missy's Restaurant on May 16, 2014. The officers called Detective Austin Clark ("Detective Clark"), who arrived at the scene shortly thereafter. Naylor was placed under arrest for driving while suspended and gave consent to the officers to search his car. Detective Clark searched Naylor's car and discovered $675 in cash and a baseball cap.

Detective Clark subsequently interviewed Naylor and showed him pictures from the surveillance footage at Missy's Restaurant. Naylor denied being the person in the surveillance video and maintained that he had nothing to do with the crime. Naylor acknowledged that the cap found in his car was his, and said that the $675 came from poker winnings and money given to him by his girlfriend.

Elsie McCartney ("McCartney") was the manager of the Farm Fresh Store in Collinsville. McCartney testified that she and another employee, Margaret Cooper ("Cooper"), were closing the store on May 15, 2014, when she noticed that the change bag was missing. McCartney

5

testified that the change bag was usually kept in a file cabinet in the back office of the store, an area not open to the public and marked by a sign reading "employees only." McCartney explained that once she noticed the change bag was missing, she and Cooper checked the store's security cameras. McCartney testified that the security camera showed a car backed up to the side of the building, and confirmed that State's Exhibit 7 was a still photo of the car. McCartney further testified that the security footage showed the driver of the car, a man, exit the vehicle and enter the building. McCartney stated that the security cameras inside the store showed the man entering the office, searching a desk and a file cabinet, removing the change bag, and exiting the store.

McCartney testified that after viewing the surveillance videos, she called the Collinsville Police Department. McCartney stated that she showed the responding officer the surveillance videos but was unable to make copies of the videos. McCartney stated that the officer used his phone to take photographs from stills of the videos, and she confirmed that those photographs were reproduced in State's Exhibits 7 and 8. Finally, McCartney testified that while State's Exhibit 7 made the car appear yellow, the surveillance video showed that the car was actually burnt orange with purple stripes. On redirect examination, McCartney testified that the man in the surveillance video was wearing light, tan-colored pants and a baseball cap.

The next witness to testify was Detective Christopher Warren ("Detective Warren") from the Collinsville Police Department. Detective Warren testified that he investigated the May 15, 2014, theft of the Farm Fresh Store. Detective Warren confirmed that he reviewed the still photographs of the surveillance video. Detective Warren also testified that he went to the Farm Fresh Store and watched the surveillance video "five to six times." Detective Warren stated that the car in question was a two-door Pontiac Grand Prix. Detective Warren identified Naylor, who

6

was present in court, as the man depicted in the surveillance video. Finally, Detective Warren described Naylor's voice as gravelly, scratchy, and deep.

Dean Wilson ("Wilson"), an employee of the Sandwich Shop in Collinsville, also testified. Wilson stated that he was working as a cook at the Sandwich Shop on May 15, 2014. Wilson testified that he observed a man standing in the kitchen around 3:00 P.M. Wilson testified that he asked the man what he needed, and the man asked if the Sandwich Shop was hiring. Wilson stated the store was not hiring and the man left through the back door. Wilson identified Naylor as the man he saw in the kitchen. Wilson also stated that the man's voice was "a little raspy, real low." Wilson testified that he listened to Naylor's interview with police in State's Exhibit 19(b), and identified the voice in the recording as Naylor's. Wilson also identified Naylor as the man he saw in the Sandwich Shop on May 15, 2014.

Wilson's co-worker, Geralyn Hale ("Hale") testified that she was also working at the Sandwich Shop on May 15, 2014. Hale testified that she followed the man in question outside when he exited the store. Hale stated that she observed the man's car—"a burnt orange colored vehicle"—and recorded a portion of the license plate number. Hale recorded the first part of the license plate number as "PH5" and also noted that there was a "6" on the license plate.

Randy Lee Schott ("Schott"), a body shop manager, examined photographs of the car at the Farm Fresh Store (State's Exhibit 7), the car at the truck stop near Missy's Restaurant (State's Exhibit 17), and the car Naylor was driving when he was pulled over on May 30, 2014 (State's Exhibits 23 and 24). Schott testified that the cars in each photograph "appear similar."

Officer Jason Harrison ("Officer Harrison") of the Collinsville Police Department testified that he responded to the Farm Fresh Store on May 15, 2014, spoke to McCartney, and viewed the surveillance video. McCartney was unable to make a copy of the video, but Officer

7

Harrison took two pictures—State's Exhibits 7 and 8. Officer Harrison testified as to the description of the suspect as noted in his police report: "Black male wearing hat and sunglasses with a cream colored jacket with black sleeves and light colored pants. He appeared to be about six foot tall, weighing 225 pounds with no facial hair." Officer Harrison stated that Naylor's appearance was "consistent" with the appearance of the man in the surveillance video.

Naylor subsequently submitted a Motion for Judgment of Acquittal at the Close of all the Evidence. The trial court denied the motion and submitted the case to the jury. The jury found Naylor guilty on all counts. The trial court sentenced Naylor, as a prior and persistent offender, to fifteen years' imprisonment for Count I, one year imprisonment for Count II, and seven years' imprisonment for Count III. The trial court ran all sentences concurrently for a total sentence of fifteen years. This appeal follows.

<u>Points Relied On</u>

Naylor raises three points on appeal. First, Naylor contends the trial court erred in overruling his motion for judgment of acquittal for the charge of first-degree burglary because the State failed to present sufficient evidence from which a reasonable juror could have found that Naylor knowingly entered unlawfully into the office area of Missy's Restaurant. Second, Naylor claims the trial court erred in overruling his motion for judgment of acquittal for the charge of first-degree burglary because the State failed to present sufficient evidence that there was anyone else present in the room at the time Naylor entered the office area of Missy's Restaurant and took money from Giesler's purse. Third, Naylor contends the trial court abused its discretion in allowing testimony regarding Naylor's involvement in a theft and an attempted theft in Illinois one day before the theft from Missy's Restaurant because the testimony had no legitimate tendency to establish Naylor's guilt for the theft at Missy's Restaurant, was more

8

prejudicial than probative, and was presented only to show Naylor's propensity to commit burglaries of businesses and to engage in criminal activity generally.

Discussion

**I.       Point One—Unlawful Entry**

Naylor contends that the trial court erred in overruling his motion for judgment of acquittal for the charge of first-degree burglary. Specifically, Naylor contends that the location and signage of the office was insufficient to make Naylor aware that the office was not open to the public, and therefore, the State failed to present sufficient evidence from which a reasonable juror could have found that Naylor *knowingly* entered unlawfully into the office area of Missy's Restaurant. We are not persuaded.

A.  Standard of Review

In a challenge to the sufficiency of the evidence, our review is limited to a determination of whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. State v. Grim, 854 S.W.2d 403, 405 (Mo. banc 1993). We view all of the evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict, and we disregard all evidence and inferences to the contrary. Id.

The State has the burden to present sufficient evidence "to prove each and every element of a criminal case." State v. Jordan, 181 S.W.3d 588, 592 (Mo. App. E.D. 2005). Thus, the relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Bateman, 318 S.W.3d 681, 686-87 (Mo. banc 2010).

9

B.  Sufficiency of the Evidence

Commission of first-degree burglary under Section 569.160[2] requires the perpetrator to "knowingly" unlawfully enter a building or inhabitable structure.  The statute specifies that a person enters unlawfully "in or upon premises when he or she is not licensed or privileged to do so."  Section 569.010.  Thus, a person "enters unlawfully" when "he is aware he has no privilege to enter."  State v. Hunt, 451 S.W.3d 251, 257 (Mo. banc 2014).  Knowledge is typically inferred from circumstantial evidence because direct evidence is rarely available.  Id.  Further, it is well-settled, and in fact specified in Section 569.010, that "[a] license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public."  Section 569.010; State v. Norfolk, 745 S.W.2d 737, 739 (Mo. App. E.D. 1987).

The central question presented in this point on appeal is whether the State adduced sufficient evidence to allow the jury to determine beyond a reasonable doubt that Naylor entered unlawfully—that is, *knowingly* entered without a license or privilege to do so—a part of Missy's Restaurant that was not open to the public, namely the office.  The evidence is not disputed that the restaurant area of Missy's Restaurant was open to the public, which by definition included Naylor.  Had Naylor stolen money from the public area of the restaurant, he could be charged only with stealing, not burglary.  For Naylor to have knowingly entered the office unlawfully, he must have been aware that his entry into the office was unlawful because it was not open to the public.  State v. Brown, 457 S.W.3d 772, 779-80 (Mo. App. E.D. 2014).

---

[2] All statutory references are to RSMo 2000.

The record before us presents evidence that the office which Naylor entered was located at the end of a hallway and was clearly marked by a door and a sign that read "office." As explained above, absent direct evidence, knowledge that an area is not open to the public is typically inferred from circumstantial evidence. This Court has held that signage indicating that an area is not open to the public, such as a sign reading "Authorized Personnel Only," can constitute sufficient evidence of knowing unlawful entry. See Norfolk, 745 S.W.2d at 739; see also State v. Girardier, 484 S.W.3d 356, 362 (Mo. App. E.D. 2015) (holding that, in trespassing case, evidence that women's restroom "was clearly and visibly marked with a sign on the door, at eye level, that stated it was for women only," constituted sufficient evidence to support finding that male defendant knowingly entered and remained unlawfully in the women's restroom). We see no reason to depart from this rationale in the case at hand. While a sign reading "office" is not as explicit as a sign reading "authorized personnel only," such signage is more than sufficient to support a reasonable inference that a person reading that sign would understand that the area designated as "office" is not open to the public. The fact that the office door was marked with a sign that read "office" was sufficient to support a reasonable inference that Naylor knew the area behind the door was an office, and thus, was not open to the public. An office, unlike an area such as a restroom, is not a portion of a restaurant that any reasonable person would expect to be accessible to the public. In addition, the office here was located at the end of a hallway leading away from the portion of the restaurant open to the public, further supporting the inference that Naylor knew the office he entered was not open to the public.

11

The record contains sufficient evidence from which a rational juror could reasonably infer that Naylor knew the office was not open to the public, and thus, that he was aware his entry into the office was unlawful.[3]  Point One is denied.

## II.     Point Three—Evidence of Uncharged Misconduct

Due to our holding as to Point One, we will address the evidentiary issues of Point Three before addressing the sufficiency issues presented in Point Two.  In his third point on appeal, Naylor maintains that the trial court abused its discretion in allowing the State to present evidence of his involvement in a theft at the Farm Fresh Store and an attempted theft at the Sandwich Shop, both of which occurred one day prior to the burglary of Missy's Restaurant. Naylor contends that such evidence was presented for the purpose of showing that Naylor had a propensity to commit burglaries of businesses, and that Naylor committed the crime at Missy's Restaurant because he committed two other crimes.  We disagree.

### A.  Standard of Review

The trial court has broad discretion in determining the admissibility of evidence, and its ruling will be reversed only if the trial court clearly abused its discretion.  State v. Johnson, 207 S.W.3d 24, 42 (Mo. banc 2006).  "A trial court's decision to admit evidence is an abuse of discretion when it is clearly against the logic of the circumstances … and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration."  State v. Roggenbuck, 387 S.W.3d 376, 382 (Mo. banc 2012).  On direct appeal,

---

[3] Naylor contends that the issue raised in Point One is "strikingly similar" to the issue addressed by the Western District in State v. Weide, 775 S.W.2d 255 (Mo. App. W.D. 1989).  We disagree.  In Weide, a patron at a restaurant followed a manager through a door into the kitchen of the restaurant with the apparent intent to assault the manager. Unlike the office here, the door to the kitchen in Weide did not have a sign of any kind.  The Western District relied on this fact in holding that the patron did not make an unlawful entry "with knowledge," noting that "no visible signs indicated that the restaurant prohibited public entry through the swinging door or even indicated what was behind the door."  Id. at 258.  Here, the door to the office contained a visible sign clearly indicating that the door led to an "office."  The rationale in Weide is simply inapposite.

12

this Court reviews the trial court's decision "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." State v. Forrest, 183 S.W.3d 218, 223-24 (Mo. banc 2006). Trial court error is not prejudicial unless there is a reasonable probability that the error affected the outcome of the trial. Id. at 224.

### B. Naylor's Uncharged Misconduct was Admissible as Identification Evidence

Generally, evidence of uncharged crimes is inadmissible for the purpose of showing the defendant's propensity to commit crimes. State v. Jackson, 228 S.W.3d 603, 606 (Mo. App. W.D. 2007). Understandably, the rationale behind this general rule is that such evidence may cause a jury to convict the defendant on the basis of his propensity to commit such crimes without regard to whether he is actually guilty of the *crime charged*. Id.

However, evidence of uncharged misconduct becomes admissible if the evidence is both logically and legally relevant. Id. Evidence is logically relevant if it has some legitimate tendency to establish the defendant's guilt of the crime for which he is charged. Id. Evidence is legally relevant if its probative value outweighs its prejudicial effect. Id. Several scenarios are recognized as rendering evidence of uncharged misconduct logically relevant—when the evidence tends to establish: motive; intent; the absence of mistake or accident; a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or the identity of the person charged with the commission of the crime for which he is on trial. Id. Evidence of uncharged misconduct may also be deemed logically relevant if the evidence is part of a sequence of events surrounding the charged offense and necessary to present a complete and coherent picture of the events that transpired. Id.

13

The balancing of the prejudicial effect and the probative value of the challenged evidence rests within the sound discretion of the trial court. State v. Bernard, 849 S.W.2d 10, 13 (Mo. banc 1993). We are mindful that relevant evidence is not inadmissible "merely because it tends to prejudice the defendant," because "[a]ny incriminating evidence is by definition prejudicial." State v. Shaw, 636 S.W.2d 667, 672 (Mo. banc 1982). Instead, "[r]elevance is the touchstone of due process, and beyond that the decision whether potentially prejudicial or inflammatory evidence should be admitted lies within the sound discretion of the trial court, which is in a better position to balance the probative value and danger of the evidence." Id.

Because evidence of uncharged crimes is, by definition, prejudicial to the defendant, it should only be admitted into evidence when strictly necessary. State v. Williams, 804 S.W.2d 408, 410 (Mo. App. S.D. 1991). The State argues that evidence of the theft and attempted theft on the day before the incident at Missy's Restaurant was relevant to prove the identity of Naylor as the person who entered the office at Missy's Restaurant. Evidence of uncharged crimes as identification evidence is improper "[i]f the identity of the accused is established by other evidence and is therefore no longer an issue." Id. Here, the surveillance videos from Missy's Restaurant revealed only the general appearance of the suspect and his car, leaving the actual identity of the suspect in question. Further, Naylor denied that he was the person in the surveillance videos at Missy's Restaurant, putting his identification squarely at issue at trial and making the introduction of identity evidence necessary and probative. Not surprisingly, the evidence presented at trial regarding the Illinois thefts focused on the similarities between the suspect's appearance and car in the Missy's Restaurant video and Naylor's appearance and car as established by the evidence obtained in connection with the Illinois incidents the day before. Specifically, the State presented evidence regarding Naylor's car, clothing, and voice, all of

14

which tended to establish the identity of the person charged with the commission of the crime—Naylor—as the man seen in the Missy's Restaurant surveillance videos.

The State presented evidence that the burnt orange car Naylor was driving when he was pulled over on May 30, 2014—two weeks after the burglary of Missy's Restaurant—was similar to the burnt orange car seen in the Missy's Restaurant surveillance footage. Testimony by McCartney, Wilson, and Hale placed Naylor in the same burnt orange car one day before the Missy's Restaurant burglary. Hale's testimony further linked the car Naylor was driving in Illinois to the one he was driving on May 30, 2014, by virtue of the license plate number that Hale recorded. This evidence considerably bolstered the State's argument that the burnt orange car seen in the Missy's Restaurant surveillance video was the same car Naylor was driving on both May 30, 2014, and May 15, 2014. Finally, in-court identifications of Naylor by Detective Warren and Wilson also linked Naylor to the burnt orange car.

Evidence of the Illinois incidents also tended to prove Naylor's identity because of the clothes Naylor was wearing. The evidence presented tended to establish that the clothing and baseball cap worn by the man identified as Naylor during the Illinois incidents was similar to the clothing and baseball cap worn by the suspect in the Missy's Restaurant surveillance videos. This evidence was probative due to the short period of time—one day—between the Illinois incidents and the Missy's Restaurant burglary, and also because a similar baseball cap was found in Naylor's car during the May 30, 2014, traffic stop. Additionally, Officer Harrison testified that Naylor's appearance in the Farm Fresh Store surveillance video was "consistent" with the appearance of the man in the surveillance video at Missy's Restaurant.

Finally, the State presented evidence of the distinctive voice of the man involved in the Illinois incidents, which tended to identify Naylor as the man in question and thus, to further link

15

him to the burnt orange car and the suspect seen in the Missy's Restaurant surveillance videos. Wilson testified that the man in the Sandwich Shop on May 15, 2014, had a "low," "raspy" voice, and stated that he recognized the voice as Naylor's after listening to an audio recording of Naylor's interview with police. Detective Warren also testified that Naylor's voice was "gravelly," "scratchy," and "deep."

All of the above evidence tended to establish the identity of the person charged with the commission of the crime—Naylor—as the man seen in the Missy's Restaurant surveillance videos. Thus, the evidence was not, as Naylor contends, "pure propensity evidence." Instead, the evidence was highly relevant and probative with respect to establishing the identity of the man captured by the Missy's Restaurant surveillance cameras.

Naylor also complains that certain testimony regarding the circumstances surrounding the Illinois incidents was inadmissible propensity evidence. Specifically, McCartney testified that she noticed a change bag missing from the back office of the store, that she checked the surveillance video as a result, and that the video showed a man backing his car up to the side of the building, entering the office, and removing the change bag from a filing cabinet. Similarly, Wilson and Hale testified as to the suspicious actions of the man in the Sandwich Shop, including how he seemed to try to gain access to private areas of the store. Naylor's argument is unavailing. Every piece of evidence relating to the Illinois incidents either (1) directly tended to establish the identity of Naylor, the person charged with the commission of the crime for which he was on trial; or (2) provided necessary context for that evidence. The limited testimony about the man stealing a change bag from the Farm Fresh Store was necessary to explain to the jury why McCartney, Detective Warren, and Officer Harrison viewed the surveillance videos. Similarly, the testimony about the actions of man at the Sandwich Shop was necessary to explain

16

to the jury why Wilson and Hale followed the man outside and wrote down his license plate number. Presenting evidence of the witnesses' identification testimony, without also presenting the circumstances surrounding those identifications, could have been confusing for the jury. See Jackson, 228 S.W.3d at 607 ("It would be confusing to the jury to present the identification testimony of Lee [a witness] without presenting the circumstances of the identification.").

As explained, the balancing of the prejudicial effect and the probative value of evidence rests within the sound discretion of the trial court. We will disturb that broad discretion only where the trial court has clearly abused its discretion. The trial court did not abuse its discretion in allowing testimony regarding a theft at the Farm Fresh Store and an attempted theft at the Sandwich Shop one day prior to the burglary of Missy's Restaurant, as the evidence tended to establish that Naylor was the man who committed the crime for which he was charged. Point Three is denied.[4]

## III.    Point Two—Presence of "Another Person" in "the Structure"

Finally, Naylor contends that the trial court erred in overruling his motion for judgment of acquittal for the charge of first-degree burglary because the State failed to present sufficient evidence that, at the time Naylor entered the office area of Missy's Restaurant for the purpose of stealing, any other person was present in the room. We agree.

---

[4] While we recognize that this Court, most notably and recently in Brown, 457 S.W.3d 772, has found certain evidence of uncharged crimes to be improper propensity evidence, the case at hand is distinguishable. In Brown, unlike here, there was no indication that the evidence of an uncharged crime—namely, the defendant's unlawful entry of a different church (St. Robert's) than the one he was charged with stealing from (St. Peter's)—was introduced to help prove the identity of the perpetrator. Instead, the State in Brown made an unpersuasive argument that the evidence was admissible to show the defendant's intent. Further, the uncharged crime in Brown occurred several days *after* the date of the crime with which the defendant was charged, unlike here where the incidents in Illinois occurred the day before the burglary of Missy's Restaurant. For these reasons, the Court concluded that the evidence of the defendant's unlawful entry of St. Robert's was adduced "purely as propensity evidence to assert that if the defendant was the person who went to St. Robert's, he likewise must have been the person who unlawfully entered and stole from St. Peter's." Id. at 787. We cannot similarly conclude that the evidence introduced in Naylor's case rose to the level of "purely" propensity evidence.

A.  Standard of Review

In a challenge to the sufficiency of the evidence, our review is limited to a determination of whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt.  Grim, 854 S.W.2d at 405.  We view all of the evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict, and we disregard all evidence and inferences to the contrary.  Id.

The State has the burden to present sufficient evidence "to prove each and every element of a criminal case" beyond a reasonable doubt.  Jordan, 181 S.W.3d at 592.  Thus, the relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Bateman, 318 S.W.3d at 686-87.

B.  The Evidence was Insufficient to Convict Naylor of First-Degree Burglary

In relevant part, Section 569.160 states:

> A person commits the offense of burglary in the first degree if he or she **knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure** for the purpose of committing an offense therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom … (3) There is present **in the structure** another person who is not a participant in the crime.

Section 569.160 (emphasis added).  As discussed above, knowing unlawful entry occurs when a person enters premises he is not licensed or privileged to enter, and is aware that he has no such license or privilege.  Hunt, 451 S.W.3d at 257.  Further, it is well-settled that "[a] license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public."  Section 569.010; Norfolk, 745 S.W.2d at 739.  As decided above, there was sufficient evidence presented at trial to support a conclusion that Naylor knowingly unlawfully entered a part of

18

Missy's Restaurant, the office, which was not open to the public. This evidence is sufficient to support a conviction for burglary in the second degree. However, to support a conviction of burglary in the first degree, the jury also was required to find that some other person was present in the structure at the time Naylor entered, remained in, or fled from the structure which Naylor had unlawfully entered.

This case presents an extremely unique factual scenario for our resolution. Here, the State charged that Naylor committed the crime first-degree burglary because he knowingly unlawfully entered a *room* not open to the public—the office—in the Missy's Restaurant building. The State further charged that while Naylor was in said office, Giesler was present, not in the office, but elsewhere in the *building*. Accordingly, the State presented evidence that Naylor burglarized a private office within the otherwise public restaurant during business hours. Further, and significantly, the State only presented evidence that Giesler was present in the portion of the restaurant accessible to the public during the commission of the crime. The State presented no evidence that Giesler or any other person was present in the private *office* during the commission of the crime. The issue for our resolution is whether such evidence was sufficient for a reasonable juror to find Naylor guilty of first-degree burglary beyond a reasonable doubt.

Our careful review of Missouri authority reveals no cases offering direct guidance.[5] In the absence of guiding case law, we turn our attention to the language of Section 569.160. In

---

[5] The two most relevant cases are State v. Washington, 92 S.W.3d 205 (Mo. App. W.D. 2002), and State v. Walker, 693 S.W.2d 237 (Mo. App. S.D. 1985), but the reasoning of neither is applicable to this case. In Washington, an attached garage was burglarized while non-participants in the crime were present in the home. The Court held that the evidence did not support a conviction for first-degree burglary because the garage was not part of the home's inhabitable structure. The Court reasoned that, although the home and garage were attached and shared a common roof and walls, "the lack of any connection between the inside of the garage and the inside of the home's living quarters"—the "absence of a common doorway"—undermined inclusion of the garage within the home's inhabitable structure. Washington, 92 S.W.3d at 209. Here, there was a common doorway, a direct point of access, connecting the office to the public portion of the restaurant in which Giesler and others were present. In Walker, the defendant

19

interpreting a statute, we must assess the General Assembly's intent "from the words used in the statute and give effect to that intent." Washington, 92 S.W.3d at 208. In so doing, we examine the language used, according it its plain and ordinary meaning. Id.

A plain and logical reading of Section 569.160 makes clear that the "building or inhabitable structure" which must be knowingly unlawfully entered in the first clause is the same "building or inhabitable structure" referenced in the second clause, and also is the same as "the structure" referenced in subsection (3). Thus, the statute logically contemplates that, in order to support a first-degree burglary conviction under subsection (3), the "building or inhabitable structure" that a defendant unlawfully entered must be the **same** "structure" in which "another person who is not a participant in the crime" is present at the time of the defendant's unlawful entry, presence in, or flight therefrom.

The State charged that Naylor "knowingly [entered] unlawfully in a room in a building not open to the public, located at 17033 New Bremen Road and owned by Melissa Giesler, for the purpose of committing stealing therein, and while in such (sic) there was present in such building Melissa Giesler, a person who was not a participant in the crime." By charging that Naylor unlawfully entered only a "room" in the building, the State bore the burden of proving that Naylor unlawfully entered the *office* specifically. See State v. Yacub, 976 S.W.2d 452, 453 (Mo. banc 1998). And, because the plain language of Section 569.160 requires that the structure which is unlawfully entered by the defendant be the *same* structure as the one in which "another

---

burglarized the flower shop portion of a building that served as a combined residence-flower shop while non-participants were present in the residence portion. The residents of the home had to enter the flower shop in order to access the inner door to the living quarters. The Court held that the evidence was sufficient to support a conviction for first-degree burglary because "the living quarters and flower shop were integral parts of the same structure." Walker, 693 S.W.2d at 239. At first blush, this rationale seems to apply to the case at hand. However, in Walker the burglary took place in the middle of the night, when the flower shop was closed to the public, meaning that the defendant effected an unlawful entry as soon as he entered the flower shop. Here, Naylor did not and could not have effected an unlawful entry until he entered the office, as the restaurant portion of Missy's Restaurant was open for business and thus open to the public.

person who is not a participant in the crime" is present, the State similarly bore the burden of proving that Giesler or some other person was present in the *office* during Naylor's unlawful entry into, presence in, or flight from the office.

While, as decided previously, the State presented sufficient evidence that Naylor knowingly unlawfully entered the office, the State presented no evidence that Giesler or anyone else was present in the "room"—specifically the office—that Naylor unlawfully entered, either at the time he effected entry to the office, at the time he remained in the office, or during the time he fled therefrom. The State simply cannot have it both ways. In order to charge Naylor with burglary as opposed to the lesser charge of stealing, the State alleged that Naylor unlawfully entered a room not open to the public that was located within a building that *was* otherwise open to the public, including Naylor. To elevate the crime to burglary in the first degree, it was incumbent upon the State to present some evidence from which a rational juror could reasonably conclude that another person was present in the portion of the building that provided the State with the basis for charging Naylor with burglary as opposed to stealing. In the absence of such evidence, the State failed to present sufficient evidence to prove one of the required elements of first-degree burglary—that there was "present in the structure another person who [was] not a participant in the crime." Section 569.160(3). Thus, we held that there was insufficient evidence presented at trial to support Naylor's conviction for first-degree burglary. Accordingly, Point Two is granted.[6]

---

[6] We note that we address only the facts before us. Therefore, our holding does *not* address whether, had the State charged the crime differently—such as charging that Naylor knowingly unlawfully entered a "building" or "inhabitable structure" rather than a "room in a building"—the evidence would have been sufficient to support a first-degree burglary conviction.

C.  The Evidence was Sufficient to Convict Naylor of Second-Degree Burglary

Although the evidence in this case was insufficient to support a conviction for first-degree burglary, the evidence does support a conviction for second-degree burglary.  We have the authority to enter judgment finding Naylor guilty of burglary in the second degree in this circumstance:

> Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of those elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.

Washington, 92 S.W.3d at 210 (quoting State v. O'Brien, 857 S.W.2d 212, 220 (Mo. banc 1993).

Second-degree burglary is a lesser-included offense of first degree burglary. Washington, 92 S.W.3d at 210.  To convict a defendant of first-degree burglary, a jury must find all of the elements necessary to convict a defendant of second-degree burglary.  A person commits the crime of second-degree burglary "when he or she knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein."  Section 569.170.  Section 569.170 (second-degree burglary) differs from Section 569.160 (first-degree burglary) only in that it "dispenses with the additional first-degree burglary element requiring an innocent's presence."  Washington, 92 S.W.3d at 210.

On the record before us, there was sufficient evidence from which a jury could have found each of the elements necessary for a second-degree burglary conviction.  The surveillance video evidence, the evidence recovered during Naylor's traffic stop, and the extensive identification testimony presented at trial all support a finding that Naylor knowingly entered the office area of Missy's Restaurant unlawfully and for the purpose of committing a crime therein

22

by taking money from Giesler's purse.  Accordingly, we vacate Naylor's conviction for first-degree burglary, enter a conviction for second-degree burglary, and remand the case for re-sentencing in light of our holding.

Conclusion

The judgment of the trial court is affirmed with respect to Points One and Three.  The judgment of the trial court is reversed with respect to Point Two and Naylor's conviction for first-degree burglary is vacated.  We enter a conviction against Naylor for second-degree burglary and remand the case for re-sentencing.

_____
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa P. Page, J., concurs.